## FARMERS' BANK OF FRANKFORT V. BANK OF CANTON.

1. When sustained by competent evidence, a general verdict upon all the issues is conclusive as to every averment essential to a recovery contained in the pleading of the prevailing party.

2. Evidence examined, and *held*, to be sufficient to justify a verdict in favor of the defendant.

(Syllabus by the Court.   Opinion filed Jan. 27, 1896.)

Appeal from circuit court, Lincoln county.   Hon. JOSEPH W. JONES, Judge.

Action on a draft.   From a judgment of dismissal, and an order denying a new trial, plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*O. S. Gifford*, for appellant.

*C. B. Kennedy*, for respondent.

FULLER, J.   The complaint herein states a cause of action upon the following bill of exchange, the payment of which was stopped, and the execution of which the defendant admits: "Bank of Canton: Pay to the order of Farmers' Bank $1,000 (one thousand and no-100 dollars), Gilman, Son & Co., New York. J. A. Goding, Cashier." The issues of fact presented by the answer and a reply thereto were tried to a jury. Upon a verdict, in which all the issues were found against the plaintiff, and in favor of the defendant, a judgment dismissing plaintiff's complaint and for costs in favor of defendant, was entered, from which, and from an order overruling a motion for a new trial, plaintiff appeals.

It appears from the evidence offered to sustain the answer and establish the theory of the defense that R. V. Noble, a resident of Canton, was negotiating for the exchange of $5,000 in cash and $10,000 worth of real property which he owned, with A. J. Miller of Frankfort, Indiana, for a stock of merchandise valued at $15,000, and in order to make the cash payment agreed upon, had entered into the following arrangement with

the respondent bank:   When the goods were on board the cars at Frankfort, billed to respondent at Canton, respondent was to advance the cash payment for the benefit of Noble, by accepting and paying a sight draft for $5,000, drawn thereon, with a bill of lading attached, and to take a mortgage upon the property as security for said amount whenever the same reached its destination.   Noble testified, in effect, that he fully advised appellant of all the material details concerning his plan to obtain the money, and that pursuant to a subsequent arrangement with Miller, by which each party was to deposit $1,000 as earnest money, and for the purpose of obtaining his $1,000 to be placed in appellant's bank as a forfeit to Miller in case he should fail to comply fully with the terms of his written contract, to convey the land and pay the money, he drew a sight draft upon respondent bank on the 28th day of July, 1891, for $1,000, payable to the order of D. A. Coulter, cashier, and delivered the same to appellant bank, for the purpose of having said draft forwarded for collection, with the understanding that the proceeds, when received, should be held by appellant, with the written contract and Miller's $1,000 for the benefit of, and to be delivered to, the party injured by a failure upon the part of the other to comply with the terms of said contract, to exchange the land and pay the $5,000 for said stock of merchandise.   This arrangement for a deposit of $1,000 by each party was not communicated to respondent at the time the draft was drawn, and the witness testified that he received no evidence of a deposit nor money, neither did he expect anything to be advanced by anyone before the bill of lading was mailed to respondent, although it does appear that he drew and delivered his check, thereon for $1,000 to appellant, as a part of the same transaction.   On the same day appellant received from respondent the following telegram:   "We will honor draft of R. V. Noble for one thousand dollars.   J. A. Goding, Cashier Bank of Canton."   On receipt of the sight draft, which was forwarded for collection and remittance, and

under date of August 1, 1891, respondent wrote appellant in part as follows: "When he [Noble] wired for one thousand dollars, we presumed it was necessary for him to have one thousand dollars at once, and were perfectly willing he should have it, but always subject to the conditions that the bill of lading of the goods should be attached to the draft, so that there would be no question but the goods would come on here, and it would not be subject to any contingencies. Now, then, with reference to this draft, you can tell Mr. Noble that on delivery of the bill of lading to you, to be forwarded to us with the four thousand draft payable in ninety days, we will accept and certify the $4,000 draft, and will at once pay the $1,000 now here. But, of course, before we can advance the money, the goods must be in our possession, by virtue of the bill of lading, or receipt from the railroad company." The letter from which the foregoing is quoted went into the particulars of respondent's arrangements with Noble, and was in all respects entirely sufficient to apprise appellant that no money would be advanced upon the sight draft, or credit extended to Noble until the stock of goods was properly consigned, and the bill of lading attached to the draft, and delivered to some one authorized to receive the same for respondent. Respondent having received no consideration for the draft in suit, and the jury having found from conflicting evidence, under the instructions of the court, that appellant had incurred no liability before the receipt of respondent's letter explaining the only condition under which the money in suit would be advanced, and the sight draft being received and forwarded by appellant for collection, only with the understanding upon the part of Noble that appellant would place nothing to his credit until a draft was presented to respondent, with a bill of lading attached, showing that the goods had been loaded and consigned thereto, the controlling question is whether respondent is liable, by reason of the telegram, upon a draft to which no bill of lading was attached, and notwithstanding the fact that the goods were never

shipped, and respondent never received any consideration for the draft in suit.

Respondent's letter dated August 1, 1891, was received by appellant on the 3d instant, and on the same day the draft in suit was sent in exchange for the sight draft, in response to the following telegram: "Please remit for Noble draft at once, per your telegram July twenty-eighth. D. A. Coulter, Cashier." Mr. Coulter testified that, relying upon respondent's telegram, his bank received the sight draft as cash, and placed the same to the credit of Noble, and that he accepted the trust under the arrangement between Noble and Miller, and received Noble's check for $1,000 drawn upon said account, and Miller's deposit of a similar amount, together with the contract between the parties, all of which were delivered to said Miller in satisfaction of a judgment obtained in Indiana, on the 29th day of March, 1892, brought against appellant to recover the same.

Upon conflicting evidence, viewed in the light of proper instructions as to the law of the case, the jury returned a verdict in favor of respondent upon all the issues, and thereby established the fact that the draft in suit was not appelllant's, but Noble's, property; that appellant, as the agent of Noble, for the purpose of forwarding the same for collection, never incurred any liability nor advanced any money thereon, until after it was fully advised that respondent would insist upon a full compliance with its contract with Noble, the terms of which were made known to appellant. No entry appears to have been made upon the books of the bank to indicate the nature of the transaction before it received respondent's letter, and Noble did not request appellant to pay any money or place the same to his credit. Under the circumstances, the deposit of the sight draft for collection did not vest the title thereof in appellant, and the relation of debtor and creditor did not exist between Noble and appellant while said draft remained the property of the former, nor was any liability other than that of collecting agent imposed upon appellant prior to the receipt of

respondent's letter, by which appellant was fully advised that the draft as forwarded for collection would not be paid. It is not claimed that the check drawn by Noble against the sight draft, and delivered therewith to appellant, was ever paid. If, subsequent to the notice contained in respondent's letter, appellant, by some unauthorized act,, became liable to pay Miller the amount of the draft in suit, that fact creates no liability on the part of respondent, and the evidence relating thereto was properly excluded.

From a regardful examination of the entire record, we are convinced that there were facts and circumstances before the jury sufficient to justify the verdict, and that the court neither erred in its charge to the jury nor in admitting evidence. The question being not one of law, but of fact, and having been decided by the jury in respondent's favor, the judgment appealed from is affirmed.