KLAVENESS, Appellant, v. FREESE, Respondent.

(145 N. W. 561.)

1. **Fraud—Exchange of Land For Corporate Stock—Value of Land—Admissibility of Evidence.**

In an action for deceit for inducing plaintiff to convey land in exchange for shares of stock, the value of which was alleged to have been misrepresented, **held**, that evidence as to value of the land was admissible on question whether plaintiff was induced to enter into the contract by false and fraudulent representations.

2. **Evidence—Exchange of Land For Stock Shares—Value of Land—Harmless Error.**

In a suit for deceit for fraudulent misrepresentations as to value of corporate stock, inducing plaintiff to exchange land therefor, where parties conceded that the measure of damages was the difference between actual value of the stock when received by plaintiff and what it would have been worth had the representations been true, the admission of evidence of value of the land, in view of the court's charge that it could not be considered on question of damages, was not reversible error.

3. **Damages—Measure of Damages—Law of Case—Conceded Rule.**

In an action of deceit for fraudulent representations as to stock for which plaintiff exchanged land, the rule of the measure of damages contended for by plaintiff and acquiesced in by defendant, and adopted by trial court without objection, became the law of the case.

4. **Fraud—Pleadings—Specific Representations.**

In an action for deceit for misrepresentations as to value of stock for which plaintiff was induced to exchange land, held, the complaint should allege the specific representations constituting the deceit, and not simply charge deceit.

5. **Same—Specific Representations—General Verdict—Conclusiveness as to Issues.**

Code Civ. Proc., Sec. 241, declares that an issue of fact arises upon a material allegation in complaint controverted by answer, and Civ. Code, Sec. 1203, makes actual fraud always a question of fact. **Held,** that where, in an action for

deceit for fraudulent representations as to value of stock for which he was induced to exchange land, plaintiff alleged a number of separate and specific representations, but did not request a finding upon each representation, and the trial court instructed jury to find for plaintiff if defendant made either of such representations, a general verdict for plaintiff was not necessarily conclusive that defendant made all such representations, but only as to those essential to his recovery.

**6.   Same—Numerous Misrepresentations—Recovery Upon One.**

In an action of deceit for damages for specific representations as to value of stock, inducing plaintiff to exchange therefor land, held, that plaintiff could recover if defendant made either one of such fraudulent representations.

**7.   Fraud—Inadequate Damages—Passion and Prejudice.**

In an action of deceit for $7,700 damages for fraudulent representations as to value of stock, inducing plaintiff's exchange of land therefor, there being no standard of measurement, and damages being unliquidated, and there was evidence on which the jury might have based its verdict if it did not believe that defendant made certain specified false representation, held, that a verdict for $50 for plaintiff did not indicate that jury acted under influence of passion, prejudice, or gross mistake.

**8.   Fraud—Admission of Evidence—Value—Scope of Inquiry.**

In an action for deceit, where the value of stock exchanged to plaintiff by defendant for land, was involved, held, that, where there are only occasional transactions in stock, and between individuals, and not on the open market, it was not error to admit evidence as to financial condition of the companies issuing the stock, their operations, stock sales, etc., both before and after the date of the transaction in question, to determine the value of the stock on said date.

**9.   Trial—Instructions—False Representations—Grounds of Belief—Irrelevant Question.**

In an action for deceit for false representations, alleged to have been made with knowledge by defendant of their falsity, the case having been tried upon that theory, held, that it was not error for trial court to refuse to instruct jury as to defendant's liability in case of representations, made without reasonable grounds for believing them to be true, but without actual knowledge of their falsity.

(Opinion filed February 14, 1914.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Eivind Klaveness against John M. Freese, for dam-

ages for alleged deceit. From a judgment for plaintiff for an alleged insufficient amount, he appeals. Affirmed.

*U. S. G. Cherry,* and *Herbert Abbott,* for Appellant.

The value of the real estate transferred in exchange for the stock, is immaterial. The plaintiff is entitled to the benefit of any bargain he may have made. The court's instruction on this point did not eliminate the error or modify the prejudicial effect of the evidence. Howard v. Sexton, 4 N. Y. 157; Upton v. Hume, 24 Ore. 420, 41 A. S. Rep. 863.

Such testimony is admissible only in cases where the difference in value is so great as to be beyond the range of a fair difference in judgment. Banghart v. Hyde, 94 Mich. 51, 53 N. W. 915; Kidder v. Smith, 34 Vt. 294. In this case there is no claim that either party was deceived as to the value of the lands, or that any misrepresentations were made in regard to their value.

The evidence was insufficient to sustain the verdict of but $50.

The jury found for the plaintiff upon all the issues. The jury therefore found that the fraudulent acts and representations as alleged in the complaint and supported by the evidence were committed and made by the defendant.

The court erred in receiving in evidence, over the plaintiff's objection, a great mass of evidence touching the financial condition, the physical operations, the stock sales, the re-organization, and various other phases of the Cox Multi-Mailer Company, and also the Standard Assembler Company, at times other than the date of the transaction in question, and so remote therefrom as to be inadmissible, and of such character as to greatly mislead the jury. 20 Cyc., pages 42, 43, 136, 118; 35 Cyc., page 475; Western Twine Co. v. Wright, 11 S. D. 521.

The court erred in instructing the jury to the effect that to entitle the plaintiff to recover, defendant must have known that his representations were false. This is material error, although the verdict was for the plaintiff, because under the influence of this instruction some of the representations alleged in the plaintiff's complaint and supported by evidence, may have been treated by the jury as not sufficiently supported by the evidence, and thereby the amount of damages be reduced.

### IN REPLY.

The actual or intrinsic value of the stock in September, 1909, was not involved in this action. The only thing that was involved was its market value.

The jury, in finding all the issues in favor of the plaintiff, found for the plaintiff upon this issue.

*Boyce, Warren & Fairbank,* for Respondent.

The testimony as to the value of the house and lot given in exchange for the stock was admissible on the question of the alleged deceit and to show what the transaction actually was as well as bearing upon the good faith of the plaintiff and his reliance upon the alleged representations of the defendant as to the value of the stock. Weidner v. Phillips, 21 N. E. 1011 (N. Y.); Vaupel v. Mulhall, 118 N. W. 272 (Ia.); Farmers State Bank v. Yenney, 102 N. W. 617 (Neb.); Aldrich v. Scribner, 109 N. W. 1122 (Mich.); Woteshek v. Neumann, 138 N. W. 1000 (Wis.)

The amount of the damages was of course for the jury, and in an action for damages for alleged deceit is peculiarly within the province of the jury. There is no presumption from the form of the general verdict that the jury based their verdict on the particular alleged misrepresentation as to value of the Multi-Mailer Co. stock. There were numerous other alleged misrepresentations on which the jury may have found for the plaintiff and on which they may have based their verdict affecting very slightly or not at all the value of the stock. Edney v. Baum, 62 N. W. 461 (Neb.); Ry. Co. v. Lowrie, 144 S. W. 367.

The evidence as to the history, sales of stock, affairs and condition of the two companies, both prior and subsequently to the date of the transaction in question, was competent and admissible. Hindman v. First Nat. Bank, 50 C. C. A. 623, 57 L. R. A. 108; Whiting v. Price, 51 N. E. 1084, 76 Am. St. 262 (Mass.); Collins v. Chipman, 95 S. W. 666; Campbell v. Hillman, 61 Am. Dec. 195 (Ky.)

The court correctly charged the jury that in an action of deceit it is necessary for plaintiff to prove that defendant knew the representations to be false. It was so charged in the complaint. The action was not brought on the theory that defendant negligently made false statements without knowing whether they were true or not, and no evidence to that effect was given, but it is

averred that he knew them to be false. This averment and proof thereof in an action for damages for deceit, where plaintiff had elected to affirm the transaction and sue for damages, were an essential part of plaintiff's case.

Actual knowledge by defendant of the falsity of the statements alleged to have been made is essential to an action of deceit. Boddy v. Henry, 53 L. R. A. 769, 85 N. W. 771 (Ia.); Wakeman v. Dailey, 51 N. Y. 27; Kountze v. Kennedy, 147 N. Y. 124, 29 L. R. A. 260, 41 N. E. 414; Kimber v. Young, 70 C. C. A. 181.

GATES, J. Action for deceit. The complaint alleges, in substance, that on September 23, 1909, plaintiff traded to defendant certain lots in Sioux Falls for 550 shares of the capital stock of the Standard Assembler Company, and 550 shares of the Cox Multi-Mailer Company; that as a part of said transaction defendant loaned plaintiff $2,500, of which $2,000 was used to pay off a mortgage upon the lots; that at defendant's request the deed to the lots was made to one McCombs of Chicago, and the note and the mortgage of $2,500 was made payable to one Larson of Oak Park; that plaintiff was induced to exchange the lot for such stock by means of the following representations: (1) That one Ora J. McCombs was the owner of 2,250 shares of the capital stock of the Standard Assembler Company, and 550 shares of the stock of the Cox Multi-Mailer Company, each of the par value of $10 per share. (2) That said McCombs was exceedingly desirous of exchanging said stock for said lots, and for that purpose would sacrifice greatly upon the market value of the stocks. (3) That said Standard Assembler Company was a successful and going company, the owner of the patents upon and the builder and owner of certain machines constructing to be used, and then about to be used, very extensively in the printing trade. (4) That the stock of the said company had acquired upon the stock market in Chicago and elsewhere a fixed and standard market price, and was readily salable upon the stock market at $4 per share. (5) That said stock within the past few days or weeks had been sold upon the market as high as $5 per share. (6) That a resident of Wisconsin had sold a large block of said stock at the cash price of $5 per share, or thereabouts, within a few days or weeks immediately prior therto. (7) That said stock could not be purchased upon the stock markets or elsewhere at less than $4 per share. (8) That

the said Cox Multi-Mailer Company stock had obtained a fixed and standard price upon the stock market in Chicago and other cities, and was readily salable upon said markets at $10 per share, and could not be purchased at less than that price. (9) That the Cox Multi-Mailer Company was in good financial standing, was a prosperous, successful, and going company, and was the owner of the patents upon and of a large number of machines known as the Cox Multi-Mailer, used in the newspaper printing trade. (10) That the said Cox Multi-Mailer machine had been so perfected that it had become greatly successful as an operating machine. (11) That both said companies were in such financial condition that it was a certainty that the same would pay large dividends within one year. (12) That the reason said McCombs was desirous of making said exchange was because of his great need to have his funds invested in property which would be steadily yielding a monthly rental or other frequent income. The complaint further alleged that the foregoing representations were made in the month of August, 1909, and that at said time defendant concealed from the plaintiff the following facts: (1) That the Cox Multi-Mailer Company was insolvent, and had been since prior to January 1, 1907. (2) That the Cox Multi-Mailer machine was not successfully operated, and never had been, and was worthless. (3) That said company at said time was in financial distress, and was indebted about $50,000 past due, and that its assets did not exceed the value of $1,000. (4) That many of the large stockholders were making strenuous efforts to sell and dispose of their stock at any price obtainable. (5) That defendant had made and was then making strenuous efforts to sell his own stock at $2 per share or less. (6) That the creditors were pressing for payment of their claims, and threatening various suits. (7) That the Standard Assembler Company was a commercial and financial failure. (8) That substantially all of the outstanding stock of said company was promotion stock issued without consideration. (9) That said stock had no set price, or other price, on the stock market. (10) That the machine known as the Standard Assembler had not been and could not be, made to successfully operate. (11) That the scheme and plan of the promoters of said company and the holders of the capital stock therein had been practically abandoned. (12) That defendant had been making, and was then making,

strenuous efforts to dispose of his own stock in said company at about 10 cents per share. (13) That said company was without assets, and was financially insolvent, and was practically an abandoned enterprise, and that all of said facts were well known to defendant. That thereafter and during the month of September defendant made the further false representations: (1) That to perfect said exchange it would be necessary that said mortgage of $2,000 should be paid off, and said premises conveyed free of incumbrance to said McCombs. (2) That said defendant had a friend by the name of Robert Larson in Chicago, engaged in the money-loaning business, and defendant could procure a loan of $2,500 from said Illinois friend upon the note of the plaintiff. (3) That said defendant had succeeded in making an arrangement whereby said McCombs could exchange for said premises 550 shares of the Standard Assembler Company and 550 shares of the Cox Multi-Mailer Company, the former on the basis of $2.75 and the latter on the basis of $10 per share. (4) That he could and would arrange with said McCombs to exchange, at the price of $4 per share, enough of said McCombs' holdings of the Standard Assembler stock, through an agent in Minneapolis, with a holder of certain Multi-Mailer stock, to reduce said McCombs' holdings of Assembler stock to 550 shares and to increase his Multi-Mailer stock to 550 shares, for which he would be compelled to pay on the basis of $10 per share. (5) That it would be greatly to the advantage of plaintiff to own and hold equal amounts, to wit, 550 shares in each of said corporations. (6) That said Cox Multi-Mailer Company was in such excellent financial condition, and so certain within a year to pay large dividends, that its stock would be more desirable than Standard Assembler stock. That each and all of the various statements and representations so made by the said defendant to the plaintiff were wholly false and untrue, all of which was fully known at all said times to the said defendant. That by reason of the facts alleged plaintiff sustained damages in the sum of $7,700, with interest from September 23, 1909.

Defendant answered, in substance, as follows: (1) Denied making said alleged representations. (2) That plaintiff made his deed to McCombs in consideration of 550 shares of the Assembler Company stock, owned by and standing on the books in the name

of Kate Rinderer, and 550 shares of the Multi-Mailer Company stock owned by and standing on the books in the name of defendant, and of the procuring by defendant of a loan for plaintiff on his note in the sum of $2,500 secured by a pledge of said stocks and other stocks. (3) That said exchange was made at the solicitation of plaintiff, he well knowing the ownership of said stocks of which he was informed by defendant. (4) That plaintiff had fully advised himself of, and made particular inquiry as to, and well knew, the value of said stocks, and made said exchange upon his own knowledge and investigation and not upon any statements made to him by defendant.

The court charged the jury in substance as follows: (1) That the jury should find a verdict for the plaintiff in case they found from all of the evidence that the defendant made materially false statements or misrepresentations to the plaintiff: (a) touching the character, quality, or condition of the machine known as the Standard Assembler; or (b) touching the machine known as the Cox Multi-Mailer; or (c) concerning the financial condition of the Standard Assembler Company; or (d) concerning the financial condition of the Cox Multi-Mailer Company; or (e) concerning the market price at which the stock of either of said corporations was salable; and (f) that by such false statements plaintiff was induced to make the exchange relying upon, and having the right to rely upon, such representations and was damaged thereby. (2) That the measure of recovery in case they should find for the plaintiff would be the difference between the actual value of the stock on the 23d day of September, 1909, and the value it would have had on that date if the representations made by defendant had been true. (3) That in ascertaining the amount of plaintiff's damages, the jury should not take into consideration the value of the lands and premises exchanged by plaintiff for the stock; that the evidence as to the value had been introduced upon another branch of the case, to wit, upon the question of defendant's liability whether he had made the alleged representations and whether plaintiff relied thereon. (4) That the evidence introduced as to the history of these two corporations leading up to the transaction and down to a comparatively recent period, was for the purpose of enabling the jury to determine therefrom what was the actual value of the stocks at the time

of the transaction; an extended scope being sometimes necessary to determine from all the facts what was the value of the stocks at the time in question.  (5) That, in order to be actionable, false representations must relate to some matter of fact as distinguished from matter of opinion.  (6) That the defendant, to be liable, must have known at the time that his statements were in fact false.  (7) That the plaintiff, not knowing that the representations were false, must have relied, and must have had the right to rely, upon the same.  (8) That the representations must relate to some material fact that affected the value of the stock. (9) That if defendant did not make the representations of his own knowledge, but merely gave to the plaintiff such information as he himself had, at the same time stating to the plaintiff the sources of his information, that would be a defense even though the facts were not as stated, because defendant would not be liable for misstatements of the general managers of the corporations, or the incorrectness of his own information, if he himself relied upon it and believed it to be true.  (10) That the various documents put in evidence by defendant were not to be taken as proof in and of themselves of the truth of the contents of such documents, but were received merely as communications by defendant to the plaintiff at the time of and before the trade.  (11) That if the plaintiff traded for the stock as a speculative venture, understanding the nature and character of these corporations and relying upon his own judgment, and not upon the representations of the defendant, he could not recover.  These instructions were not excepted to by plaintiff, except in two particulars, to wit, as to the instruction that defendant must have known the representations to be false in order to be liable, and that if plaintiff invested as a speculative venture relying upon his own judgment, he could not recover.  The jury returned a general verdict in favor of plaintiff and assessed his damages at the sum of $50.

[1, 2] It is first contended by the appellant that the court erred in admitting evidence as to the value of the real estate conveyed by plaintiff as a part of the trade, claiming that such evidence prejudiced the jury in arriving at the amount of its verdict. Plaintiff strenuously contends that the proper measure of damages was the difference between the actual value of the stocks in said companies on September 23, 1909, and what it would have been

if the representations had been true. Respondent concedes this to be the proper measure of damages, and the learned trial court so charged the jury. The trial court also expressly charged the jury as follows: "In ascertaining and determining the amount of plaintiff's damage you are not to take into consideration the value of the lands and premises exchanged by the plaintiff for the corporate stock. The question of the value of such premises does not enter into the question of the amount of damages, if any, which the plaintiff is entitled to recover." Again, and as its last word to the jury, the court said: "The evidence in regard to the value of the house and lot is for consideration, not on the measure of damages, but on the question of whether or not the plaintiff has established a cause of action. That is, whether or not he was induced to enter into the contract by means of false and fraudulent representations, and it is not to be considered on the question of damages."

In the case of Ganow v. Ashton, 143 N. W. 383, this court said: "The value parted with by plaintiff was one of the elements of the transaction, and would have a bearing upon the issue as to whether or not defendant, as a matter of fact, made the alleged representations." While it is possible that the evidence may have prejudiced the jury in determining the amount of plaintiff's damage, we do not see what more the trial court could have done in this behalf than it did do. The trial court twice instructed the jury to pay no attention to this in determining the amount of damages. The evidence as to the value of the house and lot was admissible for the purpose specified. If this evidence had been rejected, it would have constituted prejudicial error. We certainly cannot reverse the trial court for receiving such evidence.

[3] What is said above is based upon the theory that the measure of damages contended for by the appellant, acquiesced in by respondent, and adopted by the trial court, is the correct measure. We do not wish to be understood as approving or disapproving that rule. That measure became the law of this case, whether right or wrong, by reason of the fact that no exception was taken to the portion of the instructions embracing that subject.

[4-6] Appellant next contends that the evidence is insufficient to sustain the verdict in that the damages awarded are inadequate.

He contends that the jury, in finding for him upon all of the issues, must have found that respondent made every one of the representations alleged in the complaint, and that under the alleged representation the stock had a market value on the Stock Exchange in Chicago, the jury could not have found for appellant in a less sum than $3,500. We do not understand that a general verdict which finds upon all the issues in favor of the plaintiff is necessarily conclusive that the jury believed the defendant to have made every one of the alleged representations. While it is true that by section 241, Code Civ. Proc., an issue of fact arises upon a material allegation in the complaint controverted by the answer, the ultimate and vital fact was that of deceit. While under the rules of pleading it is not sufficient to simply charge deceit, and the various representations must be specifically set forth, and, while as a question of pleading, fraud or deceit is said to be a conclusion of law (Bliss, Code Pl. § 211), still that is the end to which the specific representations are directed. By section 1203, Civ. Code, actual fraud is always a question of fact. Where there is more than one representation the jury may believe one or more of them, and the general verdict is not conclusive as to any particular one of them. On page 273 of his brief appellant's counsel expressly states, "The real issue was whether the defendant had practiced fraud upon the plaintiff, and, if so, the extent of plaintiff's damages." Plaintiff had it in his power, subject to the judicial discretion of the court, to have had from the jury an expression upon whether defendant made each particular representation. Section 271, C. C. P. He did not request the court for such special findings. Again the trial court properly charged the jury (among other things) that if it found from all the evidence that the defendant made either one of the several representations, it should find for the plaintiff. It may well be that the jury did not believe that the defendant made the representation as to the market value of the stock in Chicago, but nevertheless, under the instructions, it was bound to return a general verdict for plaintiff if it believed that the defendant made any one of the representations. The effect of appellant's contention would be that the jury could not find generally for the appellant unless it found that defendant made all

of the alleged representations. From the amount of the verdict we can only infer that the jury believed that the defendant made such of the representations as would justify its verdict.

In the case of Miles v. Penn Mut. Life Insurance Co., 23 S. D. 400, 122 N. W. 249, this court held that the words "all the issues" in a verdict of the jury were not controlling, and that by the amount of the verdict it was clearly apparent that the jury found for the defendant instead of for the plaintiff, as specified.

In Smith v. Cleaver, 25 S. D. 351, 126 N. W. 589, this court said: "Appellants' proposed findings * * * above quoted relate solely to allegations of matters in the answer which are purely evidentiary, and not the ultimate, facts. All these evidentiary circumstances were received in evidence by the court, and were doubtless given their legitimate weight and effect in the determination of the final and vital issue of fraudulent conveyance."

In Farmers' Bank v. Bank of Canton, 8 S. D. 210, 65 N. W. 1070, the syllabus by the court concisely states the rule as to the effect of a general verdict as follows: "When sustained by competent evidence, a general verdict upon all the issues is conclusive as to every averment essential to a recovery contained in the pleading of the prevailing party." The verdict then not being conclusive as to the making of every alleged representation, but only such as are essential to a recovery, was it so inadequate as to entitle appellant to have it vacated?

[7] In Abbott's Civil Jury Trials (3d Ed.) p. 769, the learned author lays down these rules: "And a verdict in an action to recover damages capable of ascertainment by some standard of measurement, but which awards an amount not only not commensurate with, but glaringly disproportioned to, that justified by the evidence, is invalid. But where there is no such standard of measurement and the damages are unliquidated and the amount to be awarded is discretionary with the jury, a verdict cannot be deemed objectionable, for inadequacy merely because, in the opinion of the court, more might have been awarded, but the verdict must be so small as to indicate that the jury must have found it while under the influence of passion, prejudice, or gross mistake, or, in other words, that it is the result of accident or perverted judgment, and not of cool and impartial deliberation."

In this case the evidence is very voluminous, covering more than 250 pages of the printed briefs; but there is evidence upon which the jury might have based its verdict if it did not believe that defendant made the alleged representation as to market value on the Stock Exchange in Chicago. There was in this case no standard of measurement and the damages were unliquidated. We are unable to conclude that in arriving at its verdict the jury was acting under the influence of passion, prejudice, or gross mistake.

[8] Appellant next contends that the court erred in receiving evidence touching the financial condition, the physical operations, the stock sales, the reorganization, and various other phases of the Cox Multi-Mailer Company, and also the Standard Assembler Company, at times before and after the date of the transaction in question, and so remote therefrom as to be inadmissible and of such a character as to greatly mislead the jury. On this point the learned trial court charged the jury as follows: "Evidence has been introduced here in regard to circumstances leading up to the transaction, as to the history of these corporations, even down to a comparatively recent period, in order that the jury may determine therefrom what was the probable value of the stocks of these two corporations at the time of the transaction in question, for where the stock transactions are between individuals, and not on the open market, in the sense of a stock exchange, and there are only occasional transactions, an extended scope is sometimes necessary to determine all of the facts, to determine what was the value at the time of the stocks." We think the court ruled correctly as to the admission of this evidence. Hindman v. First Nat. Bank, 112 Fed. 931, 50 C. C. A. 623, 57 L. R. A. 108; Whiting v. Price, 172 Mass. 240, 51 N. E. 1084, 70 Am. St. Rep. 262; Collins v. Chipman, 41 Tex. Civ. App. 563, 95 S. W. 666; Campbell v. Hillman, 15 B. Mon. (Ky.) 508, 61 Am. Dec. 195.

[9] It is next contended by appellant that the court erred in its instruction to the jury to the effect that, to entitle the plaintiff to recover, defendant must have known that his representations were false. While under section 1293, Civ. Code, defendant might also have been liable if he had made statements which were not true, provided he had no reasonable ground for believing

them to be true, still this case was not tried upon the theory of that alternative. The complaint charged the defendant with actual knowledge of the untruthfulness of the representations made by him. The evidence of the respective parties tended to support or negative that issue. The question, therefore, as to whether defendant might also be liable, provided he had no reasonable ground for believing the representations to be true, is academic. It is not error to fail or refuse to give an instruction which, although it correctly states an abstract principle of law, is not applicable to the evidence or to the theory upon which the case was tried. Quale v. Hazel, 19 S. D. 483, 104 N. W. 215; Arneson v. Spawn, 2 S. D. 269, 49 N. W. 1066, 39 Am. St. Rep. 783; Parliman v. Young, 2 Dak. 175, 4 N. W. 139, 711.

We have carefully examined the other assignments of error which relate to the admission or exclusion of testimony, and find no merit in them. A proper discussion of them would greatly lengthen this opinion, and would not tend to elucidate any principle of the law of evidence, which is not well established.

The question which is before us, upon consideration of the whole record, is not whether we, as jurors, would have returned the verdict that was returned. The question is whether the plaintiff has had a fair and impartial trial. We are of the opinion that he has.

The judgment and order denying a new trial are affirmed.