CITY OF BRISTOL, Respondent, v. HORTER, Appellant
CITY OF BRISTOL, Respondent, v. SANDSTROM, et al.,
Appellants

(43 N. W.2d 543)

(File Nos. 9105-9106. Opinion filed July 26, 1950)

**Louis H. Smith,** Sioux Falls, for Appellants.

**Bicknell & Holland,** Webster, for Respondent.

SICKEL, J.   Two actions were brought by the City of Bristol, a municipal corporation, plaintiff, for the condemnation of land.   In one case Bruno Horter is defendant and in the other the defendants are Swen E. Sandstrom and Carl E. Sandstrom.   The issues in both cases are the same, except as to the value of the land owned by different defendants.   The actions were consolidated for trial in the circuit court and on appeal.

Plaintiff's petition in each case alleges that the governing body of the city has by resolution declared the necessity for taking private property belonging to defendants for public use as a water storage area in connection with the storm and sanitary sewerage disposal by the city.   The petition prays that just compensation be made to the owners for such property.   A copy of the resolution declaring the necessity for taking the property was attached to the petition.   The answer alleges that the petition fails to state a claim upon which relief can be granted; that the taking of defendant's property is not necessary; ownership of the land in defendant; that the condemnation proceedings are void. The case was tried to a court without a jury and findings of fact, conclusions of law and judgment were entered in favor of the city.   Defendant in each case appealed.

Defendant's first contention is that the city failed to prove compliance with the rules of the State Board of Health relating to sewerage, garbage and refuse disposal and that such failure bars judgment of condemnation in this case. The city admits noncompliance with the rules of the State. Board of Health but contends such compliance was not necessary.

SDC 27.0104 in effect at the time this case was tried provides that the State Board of Health shall have power to adopt regulations "not inconsistent with the statutes of the state * * * necessary for the preservation and protection of the public health" and particularly to "prohibit and suppress" "(b) The business of scavangering and the disposal of sewerage; * * * (e) The pollution of streams and

other waters * * *". On the authority of these statutes the board adopted regulation Number 35 which reads as follows:

"Section 1. No person, company, corporation, private or public institution or municipality, shall install or materially alter or extend, for public use, any system of water supply, water purification, sewerage or sewage, garbage or refuse disposal until complete plans and specifications for such installation, alternation or extension, together with such information as the State Board of Health may require, submitted in duplicate, have been approved by the State Board of Health insofar as their sanitary features are concerned. All works shall be construed in accordance with the plans as finally approved.

"Section 2. Whenever it shall be determined that there should be any material change in the plans, construction or operation of any such system, a detailed statement of such contemplated change, together with the reasons therefor, shall be submitted in duplicate to the State Board of Health, before such change, or any contract for the making of such change is made, and then such change shall be made only after the approval as to all matters likely to affect the public health, has been given by the State Board of Health.

"No such system or alteration or extension thereof shall be placed in use until after final inspection and approval by the State Board of Health."

The above regulation in substance prohibits municipal corporations from entering into any contract to install, materially alter or extend any public system for sewerage, garbage or refuse disposal until plans and specifications therefor have been approved by the State Board of Health.

SDC 45.0201(13) grants to all municipal corporations the power "To acquire by lease, purchase, gift, condemnation, or other lawful means and hold in its corporate name or use and control as provided by law both real and personal property and easements and rights of way within or without the corporate limits for all purposes authorized by law or necessary to the exercise of any power granted." The establishment of a sewage disposal system by the municipality is authorized by SDC 45.0201 (84, 89).

The manner of exercising the power of condemnation by the municipal corporation is regulated by SDC 45.2712 in the following language: "Except as otherwise specially provided, whenever the governing body of any municipality shall deem it necessary to appropriate or damage any private property, either within or without the corporate limits of the municipality, for any purpose authorized by law, it shall, by a resolution passed by a two-thirds majority of all the members elected thereto, declare such appropriation necessary, stating the purpose and extent of such appropriation. Thereupon the proceedings for such appropriation and condemnation shall be as provided by law and the rules of practice and procedure adopted by the Supreme Court."

The condemnation statute, SDC 37.4001, provides that "In all cases where any resolution, ordinance, or other proceeding of any corporation is required by law before taking private property, a copy of such resolution, ordinance, or proceeding shall be attached to such petition". A municipal corporation is required by statute, SDC 45.2712, supra, to pass a resolution declaring the appropriation of the property to be necessary, and stating the purpose and extent of such appropriation. This is the resolution "required by law" to which reference is made in SDC 37.4001, supra, and a copy of which must be attached to the petition for condemnation.

■ ■ The statutes nowhere require a resolution or other proceeding by the State Board of Health, nor the submission and approval of plans and specifications by the board as a prerequisite to the execution of a contract by the city for the installation or extension of a sewerage disposal system or to the condemnation of real property by the muncipality for that purpose. The Board of Health was given the power to adopt such regulations as are reasonably necessary "for the preservation and protection of the public health," SDC 27.0104. To this end it may regulate the disposal of sewerage and "the pollution of streams and other waters" by a municipality. The board may establish standards for the accomplishment of these objectives and require the submission of plans and specifications in order that it may determine the fact of compliance. Such power is administrative and may be properly conferred upon the board.

However, the Board of Health is without the power to add to the statutory requirements for condemnation of real property by municipalities. Such power is legislative. Cavanagh v. Coleman, 72 S.D. 274, 33 N.W.2d 282; Casualty Reciprocal Exchange v. Sutfin, 196 Okla. 567, 166 P.2d 434, 16 C.J.S., Constitutional Law, § 138 (19). We therefore conclude that the submission of plans and specifications for the proposed sewerage disposal system was not a condition precedent to the entry of the decree of condemnation in this case.

██ Appellant also contends that there was no necessity for the taking of defendants' property. "* * * The question of the existence of the necessity for exercising the right of eminent domain, where it is first shown that the use is public, is not open to judicial investigation and determination, but that the body having power to exercise the right of eminent domain is also invested with power to determine the existence of the necessity; * * *." Chicago, M. & St. P. R. Co. v. Mason, 23 S.D. 564, 122 N.W. 601, 603; 29 C.J.S., Eminent Domain, § 89b. In this case the purpose was public and the necessity was determined by the legally authorized municipal authority. It is not contended that the city is appropriating more land than is necessary for the use intended, and there is no claim of fraud, bad faith or abuse of discretion. Therefore the city's determination that the necessity for the taking exisits is conclusive.

██ Appellant also contends that the court erred in refusing to allow the defendants to recover for damages to property not taken. Article VI, § 13 of the state constitution provides that "Private property shall not be taken for public use, or damaged, without just compensation * * *." Article XVII, § 18 of the state constitution provides: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed, * * *." This court has stated the rule to be that "* * * A party whose land is taken under condemnation proceeding is entitled to recover, not only for the value of the land actually taken, but for the damage the remaining land sustains by reason of such taking, and that the true

measure of damages in such case is the difference between the value of the farm or tract of land before the portion is taken and its value after the same is taken." Chicago M. & St. P. Ry. Co. v. Brink, 16 S.D. 644, 94 N.W. 422, 424; Schuler v. Board of Supervisors, 12 S.D. 460, 81 N.W. 890.

This case was tried without a jury, and the court made the following finding of fact Number VIII which reads: "As to said lands the Court finds that the same contains 11.1 acres of plow land worth $50.00 per acre; 1.2 acres of grass, slough hay, brush, and pasture lands worth $35.00 an acre; and 16.6 acres of slough bottom land covered with water worth the sum of $25.00 per acre, the whole value of the lands taken being found by the court to be the sum of $1,-012.00."

The court also made the following conclusion of law: "That the defendant is not entitled to recover damages in addition to the sum last above mentioned, from the plaintiff."

The acreage and corresponding value shown in finding number VIII, quoted above, total exactly $1,012.00 which is the amount of damages allowed to the defendants. This leaves nothing for damages to the property not taken. It also appears that the court made no finding as to whether land not taken was damaged. Neither did the court find the damages to be the difference between the value of the farms before the taking and their value after the taking which, as this court said in the Brink and Schuler cases, is the true measure of damages.

■ Appellants proceeded at the trial on the theory that the measure of damages in a condemnation case "is the value of the land taken and all consequent damage to the remainder." They called as a witness F. J. Studer, a Sioux Falls real estate and insurance man, and asked for his opinion as to what would be the damages to the Sandstorm and Horter farms as a result of the discharge of the effluent from the proposed sewerage disposal plant into the sloughs. Objecttions to these questions were made by the respondent on the ground that no foundation had been laid for the evidence, that the witness was not properly qualified to answer, and that the questions did not embrace the established facts in

the case. These objections were sustained by the court and the ruling is assigned as error. The measure of damages would be the difference in value of the farms before and after the taking, and there is nothing in the record to suggest that Studer was qualified to give an opinion of the value of land in the vicinity of Bristol. The objections to this and other similar questions were therefore properly sustained by the court.

Appellants also asked their witness Morehouse for his opinion as to the reasonable market value of each farm after the taking of the specific acreage, and the flowing of refuse from the sewerage disposal plant into the sloughs. Objection to this form of question was also sustained. This witness had previously testified as to the value of the entire farm before the taking and as to the value of the areas to be taken by the city in each instance. It also appears that this witness was qualified to give his opinion as to the value of the farms after the taking. The city is here condemning property as necessary for the disposition of effluent from a disposal system which it proposes to construct. It is fair to assume that this effluent will be something different than ordinary surface drainage. The circumstances surrounding the proposed disposition of effluent may be considered by the court in this case, or by a jury, in fixing the value of the farms after the taking even though the circumstances "in no other view could be ground for damages." Schuler v. Board of Supervisors, 12 S.D. 460, 81 N.W. 890, 892. This witness and others similarly questioned were entitled to take into consideration the proposed discharge of effluent from the disposal plant into the sloughs in giving their opinions as to the value of the farms after the taking.

The judgment of the circuit court is reversed with directions to retry the issue of damages.