STATE HIGHWAY COMMISSION, Respondent

v.

MADSEN et al., Appellants

(119 N.W.2d 924)

(File No. 9963. Opinion filed February 26, 1963)

**Bangs, McCullen, Butler & Foye,** and **H. F. Fellows,** Rapid City, for Defendants and Appellants.

**A. C. Miller,** Atty. Gen., and **John Wehde,** Asst. Atty. Gen., Pierre, for Plaintiff and Respondent.

RENTTO, J.   This case was instituted by the State Highway Commission to acquire by condemnation through the power of eminent domain a one-half mile strip of land containing 21.45 acres, across the property of Donald C. Madsen in Pennington County for the construction of a part of the National System of Interstate and Defense Highways. The jury fixed the compensation to be paid him at $6,250 for which judgment was entered. He moved for a new trial on the grounds of insufficiency of the evidence to justify the verdict claiming that the verdict was inadequate, which motion was denied. This appeal from the judgment asserts as error the failure of the court to grant his motion.

For some time prior to this proceeding Madsen was the owner of approximately 1,680 acres of land located about two miles east of New Underwood, South Dakota, of which about two-thirds was crop land. In addition he leased 640 acres of pasture land. This 3,320-acre unit he operated as a combined farming and live-stock-raising enterprise running between 150-200 cattle. From north to south the unit extends for a distance of three miles. In its east and west dimension it is an irregular tract. Before the taking in question, U. S. Highway 14-16, a blacktop state trunk highway, ran across it from east to west at which point it was a mile and a half wide. This severance put 580 acres of the owned land south of the highway and the remainder of it with the ranch headquarters to the north. South of the highway was a set of of old buildings of which only the residence was in use by a lessee.

The Interstate Highway involved in this taking also severs the unit, running parallel to and one-half mile north of Highway 14-16, leaving 820 acres of the owned area to the south and the ranch headquarters to the north. It is a controlled access divided four-lane highway with no underpasses. Consequently passage of livestock and farm machinery from one severed portion of the ranch to the other across or under the Interstate Highway is not possible. Such movement can be accomplished only by means of an overpass located about a mile east of the property and an interchange about a mile and a half west of the property. Crop

land and pasture areas of the unit are situated on both sides of the new highway, as was the case also with the severance made by Highway 14-16.

Each party produced three witnesses who gave evidence as to the value of the premises before the taking and the value of the remainder after the taking. Those for the landowners testified thus:

|  | Before | After | Damage |
|---|---|---|---|
| (1) | $92,400.00 | $46,200.00 | $46,200.00 |
| (2) | $92,400.00 | $46,200.00 | $46,200.00 |
| (3) | $84,000.00 | $40,997.67 | $43,002.33 |

Those for the state expressed these opinions:

|  | | | |
|---|---|---|---|
| (1) | $66,000.00 | $61,100.00 | $ 4,900.00 |
| (2) | $72,000.00 | $67,800.00 | $ 4,200.00 |
| (3) | $66,050.00 | $62,700.00 | $ 3,350.00 |

The jury award of $6,250.00 was respectively 27.5%, 49%, and 86% above the damage figure of the state's witnesses. This great disparity of views did not result from the different notions they had as to value of 21.45 acres taken for the improvement.

As to that the owner's witnesses respectively said it was worth $55, $55, and $50 per acre, and those for the state respectively said it was worth $40, $43, and $40 an acre. Manifestly, the disparity resulted from a difference in their opinions concerning the damage to the remaining land by reason of the taking. On the question of values the landowner himself testified and was supported by two farmer ranchers living and operating in the locality. The state's witnesses were a Montana rancher, who had extensive experience in real estate appraisal work in South Dakota and elsewhere and had appraised the Madsen property as a part of an eighteen-mile project on construction of this interstate highway, and two Rapid City real estate brokers. The one broker had been in the real estate business for about 20 years and had a contract with the state to appraise many tracts to be acquired on such construction. The other broker had been in the real estate business at Rapid City since 1954 and had sold several ranches in the area of the Madsen property.

When only Highway 14-16 severed the property the owner could move his cattle and machinery from one of the severed areas to the other by going across the highway. To accomplish this with his cattle and equipment he had to "flag" traffic. If the equipment was not rubber tired he would, in addition, place old tires on the road surface and cross on top of them. With the interstate as a barrier he would have to travel by county roads to either the overpass or the interchange, each route necessitating about three miles more of travel than was previously required.

As to the movement of his rubber-tired equipment there was substantial agreement by all the witnesses that the longer distance of travel would be the principal added inconvenience. Concerning the equipment without rubber tires they were in accord that this would have to be hauled but differed widely as to how often that type of equipment would be needed south of the highway, the witnesses for the state being of the view that it would be infrequently. Apparently the trend of the last two decades to equip more of the mobile machinery on farms with rubber tires is continuing.

In operating the unit as a combined ranch and farming enterprise after this taking, which was the best and most profitable use to which it could be put, it would be necessary to move livestock from one of the severed areas to the other. The owner's witnesses were of the view that this would necessitate trucking them and would entail the construction of extensive corrals and loading chutes in the area to the south of the new highway. From the evidence of the state the jury could find that the cattle could be driven from one area to the other with no need for corrals or loading chutes. Madsen's witnesses also felt it would be necessary to construct substantial shelters for the cattle in the south area and develop new water supplies for them. Testimony was introduced by the state which, if it did not eliminate these requirements, at least minimized them. One of the state's expert witnesses suggested that the inconvenience would be temporary because the owner would adjust to it by selling off the area on one side and acquiring area on the other side. He referred to this as a common practice in situations of this kind. Obviously the jury in resolving these evidentiary conflicts was more inclined to the state's view.

██ ██ While an appeal may not be taken from an order denying a new trial, SDC 1960 Supp. 33.0701; Meyer v. Meyer, 76 S.D. 268, 77 N.W.2d 559, such order is reviewable on appeal from the judgment entered in the matter. SDC 1960 Supp. 33.0710. An award of inadequate damages is a ground for granting a new trial on an assignment of insufficiency of the evidence to justify the verdict. Hanisch v. Body, 77 S.D. 265, 90 N.W.2d 924. In Klaveness v. Freese, 33 S.D. 263, 145 N.W. 561, this court said:

"And a verdict in an action to recover damages capable of ascertainment by some standard of measurement, but which awards an amount not only not commensurate with, but glaringly disproportioned to, that justified by the evidence, is invalid. But where there is no such standard of measurement and the damages are unliquidated and the amount to be awarded is discretionary with the jury, a verdict cannot be deemed objectionable for inadequacy merely because, in the opinion of the court, more might have been awarded, but the verdict must be so small as to indicate that the jury must have found it while under the influence of passion, prejudice, or gross mistake, or, in other words, that it is the result of accident or perverted judgment, and not of cool and impartial deliberation."

In a condemnation proceeding this matter is reviewed in the same manner and under the same rules as in other cases generally.

██ A new trial may not be granted solely because we might feel that the award is smaller than it should be. City of Huron v. Jelgerhuis, 77 S.D. 600, 97 N.W.2d 314. Even though a court may not increase an inadequate jury verdict in a condemnation case, it may, in the exercise of its judicial powers determine whether the award is sustained by the evidence. State Highway Commission v. Bloom, 77 S.D. 452, 93 N.W.2d 572, 77 A.L.R.2d 533. When the evidence is conflicting the verdict of the jury will not be set aside, unless it is shown to be clearly wrong.

██ The trial judge has the primary responsibility for de-

termining whether a new trial should be granted because of inadequate damages. In making that decision he is vested with a broad judicial discretion. Manifestly because of his participation in the trial he is in a far better position than are the judges of this court to say whether the award does substantial justice. Consequently we may not disturb his decision except for a clear abuse of that discretion. In denying the landowner's motion for a new trial he concluded that the testimony on behalf of the state was believable and that the jury in arriving at its verdict was not acting under the influence of passion, prejudice or gross mistake. We are unable to say that he abused his discretion in so holding.

Affirmed.

BIEGELMEIER and HOMEYER, JJ., concur.

HANSON, P. J., and ROBERTS, J., dissent.