BASIN ELECTRIC POWER COOPERATIVE, INC., Appellant
v. CUTLER, et al., Respondents

(217 N.W.2d 798)

(File No. 11208. Opinion filed May 8, 1974)

T. R. Pardy, Mumford, Protsch, Sage & Pardy, Howard, for plaintiff and appellant.

A. **William Spiry**, Britton, for defendants and respondents.

DUNN, Justice.

Basin Electric Power Cooperative, Inc., hereafter referred to as Basin Electric, brought this action in the exercise of its power of eminent domain for the purpose of imposing a power line easement over the land of the respondent Cutler. The respondent owned a total acreage of 5,960 acres which composed the ranch unit in question. Basin Electric would take an easement over a 54.26-acre area, but no land title was involved as title would remain in the landowner. There will be 15 towers on the Cutler property resting on a total of .13 acres of land. Three towers will be located in the Southeast Quarter of Section 17, two in the Northwest Quarter of Section 21, two in the Southwest Quarter of Section 21, one in the Southeast Quarter of Section 21, three in the Northeast Quarter of Section 28, one in the Southeast Quarter of Section 28, and three in the Southwest Quarter of Section 27. All of the towers will be situated on hayland or pasture land. A trial to a jury was held and it was found that there had been a $5.00 an acre decrease in value for each acre of the 5960-acre unit for a total award of $29,800. Basin Electric appeals from this judgment.

The appellant's first contention centers around whether certain witnesses for the landowner should have been allowed to testify as to their opinion of the market value of the land in question before and after the easement. Appellant contends that testimony given by certain expert witnesses for the respondent was allowed without proper foundation being laid concerning their qualifications and competence.

Witness Kopecky had a background of many years of law enforcement, but had only been in the real estate business for four years. He operated a 1,000-acre "hobby" farm on the side. Witness DeVaan had a background of ranching and farming and had been selling real estate for about eight years. He had attended an appraisal school. Neither of the witnesses belonged to a professional appraisal association which require appraisals to be analyzed and maintained at certain standards. Neither had ever been a witness in court before as to the value of property. Neither

had any particular expertise as to the effect of highline easements on the value of land. Their comparative sales were rather sketchy and not too comparative. However, both had been familiar with ranch and farm prices in this area for many years and both had bought and sold a considerable volume of ranch and farm property in Brown County in the past few years. In State ex rel. Helgerson v. Riiff, 73 S.D. 467, 44 N.W.2d 126, this Court stated:

> "The qualifications and competency of a witness to give opinion evidence is primarily in the discretion of the trial court and his ruling in determining qualifications will not be disturbed unless there is no evidence that the witness had the qualifications of an expert or the trial court has proceeded upon erroneous legal standards. 20 Am.Jur., Evidence, § 786."

Under this rule we would hold that the qualifications and competence of Kopecky and DeVaan were properly within the discretion of the trial court. Further, the trial court did not err in permitting the witness Holt to testify. The allowance of the neighboring property owner to express opinions on value was upheld in State Highway Commission v. Hayes Estate, 82 S.D. 27, 140 N.W.2d 680.

Appellant next contends that the trial court erred in permitting these witnesses to testify as to conjectural matters such as the danger of fire; of power outages; and the problems of irrigating sometime in the future. It should be kept in mind that the witnesses were not testifying as to the actual loss to the property due to these items. Rather they were testifying as to items which from their experience in the sale of real estate they felt would be considered by the buyer in negotiating for real property. Once they were qualified they were entitled to express an opinion as to value and to also state the factors they considered in arriving at a depreciation in value even though some of those factors were in the nature of conjecture.

Appellant's last contention is that his motion for a new trial should have been granted. As a basis for this contention he asserts the verdict was excessive and not sufficiently supported by

the evidence. Initially the general rule should be stated, that the trial judge has the primary responsibility for determining whether a new trial should be granted. It is within his discretion and his decision should not be disturbed except for a clear abuse of this discretion. In State Highway Commission v. Madsen, 80 S.D. 120, 119 N.W. 2nd 924, this Court stated that unless the jury in arriving at its decision was acting under influence of passion, prejudice or gross mistake, the lower court judge did not abuse his discretion in not granting a new trial.

▮ The burden of proof as to damages was certainly on the respondent and this burden forced him to prove damages to the remaining portion of the ranch as well as the area encumbered by the easement. The measure of damages in condemnation cases where fee title is taken and only involving a partial taking is the difference between the fair market value of the unit before the taking and the fair market value of what remains after the taking. State Highway Commission v. Olson, 81 S.D. 401, 136 N.W.2d 233; City of Bristol v. Horter, 73 S.D. 398, 43 N.W.2d 543; State Highway Commission v. Fortune, 77 S.D. 302, 91 N.W.2d 675. The Hayes Estate cases dealt with the concept of severance damages and stated the rule concerning severance as follows:

"In the application of this rule severance damage to the remaining property is included in an award without being designated as such and the amount allowed for the property actually taken is not segregated from the damage to the remainder. In estimating the damages to the remainder, or in other words, the depreciation in value of the part not taken, the landowner is entitled to have the jury informed as to all those facts which legitimately bear upon the market value of the ranch before and after the taking and those factors which would ordinarily influence a prospective purchaser in negotiating for the property. The manner in which the ranch was used before the taking and the manner in which it can be used afterwards is of prime importance. Anything which is directly injurious to its particular adaptability or detracts from its use at maximum efficiency affects market value and is competent and a legitimate factor

in establishing total damages sustained within the contemplation of an award of just compensation. 18. Am. Jur., Eminent Domain, § 266."

 There is nothing wrong with the rule laid down by the Court for determining just compensation for the landowner. The formula of determining the value of the ranch before the easement and the value of the ranch after the easement is well recognized in fee title cases. The problem here is that the rule does not fit the evidence. If the jury is to be allowed to make a determination of severance damage to the entire unit there must be evidence of damage to the entire unit. Severance is not "manna from heaven"; it must be based on actual loss of value.

There are no "bread and butter" items listed by any witness as to the loss for the entire unit. All of the land in the ranch can be used for the exact purpose it is now being used after the easement is placed on the land; and that is a cow-calf operation which according to the experts is also the highest and best use to which this property can be put. Admittedly there is no reduction in the number of cattle that can run on the land; there is no problem of the cattle being cut off from the main ranch, or from their water supply, or from their shelter as we sometimes have in controlled access highway cases.

The expert witnesses named the following factors that would cause damage to this property as a result of the easement. They specifically mentioned weed control, irrigation, trouble of checking the cattle with an airplane, and the fact that the towers would be an eyesore.[1] All of these items just mentioned would refer to damage to the immediate area of the easement. There is no evidence of a carry-over to the entire ranch unit. Other items specifically mentioned by the expert were possible damage by fire, by leaving the gates open, and possibly mixing up the bulls, are also local in character and appear to be all subject to tort claims and are even covered by contract. The petition, § 9, states: "That plaintiff will be responsible for all damage to crops, roads, fences and livestock caused by the construction and maintenance of said transmission and distribution systems". Thus

---

1. In these times of an energy crisis these huge towers bringing power into the area might strike some buyers as more of a boon than an eyesore.

these damages, if and when they occur, will be paid over and above any damages paid for this easement.

■ This leaves one item of damage mentioned by the experts to be considered and that is the fact that repairmen will be permitted to enter on the property to inspect and repair the lines and that Basin Electric will build and maintain gates in the landowner's fences for that purpose. According to the landowners, there is presently only one road by which one can enter the property; that only four people have access to this road from his immediate family and that this isolation is important to the cattleman because of the danger of rustling. Nothing was said about other gates, but it would seem doubtful if a 5900-acre plus ranch only had one gate. Further, there is evidence in the record of archeological and historical groups visiting the Indian cemetery on the ranch. There is also evidence that high school classes and church groups regularly have picnics on the Elm River on this ranch; and there is evidence of outsiders coming to the ranch for the scenic view and to ride their horses. Surely we should not condemn such generous sharing of one's property, but it does seem to lessen the importance of the landowner's insistence on privacy. Further, by the simple purchase of a padlock for each of the gates, with keys only for Basin Electric and the landowner, trespassers and thieves would be discouraged to the point where it would be more convenient to lower the fence than to try to enter by way of a gate, and, of course, trespassers and thieves can presently lower the fence and enter the property.

■ All this does not mean that the landowner has not sustained damage and substantial damage. A 150-foot perpetual easement across property, damages that property for the purposes of use and sale; and it damages the unit of land cut by the easement. However, the severance damage in highline easement cases is localized damage which should be restricted by the Court to the 160-acre units that are crossed by this easement. Evidence of damage has been shown to these units which justifies severance damage. It has not been proved for the entire ranching unit. A similar conclusion was reached in the case of McGinley v. Platte Valley Public Power & Irrigation Dist., 133 Neb. 420, 275 N.W. 593, which found that certain pasture lands were not affected by a taking in these words:

"Where pasture lands, forming the principal acreage of a cattle ranch partly taken for a public purpose, will make the same contribution in value to the remainder after the taking as they previously contributed to the whole, they should not be considered in estimating the fair and reasonable market value of the entire portion of·the ranch not taken."

██ The conclusion is that the trial court erred in not restricting severance damages to the units where there was evidence to prove that damage had been sustained. [2]

The judgment of the trial court is reversed and the cause remanded for a new trial.

BIEGELMEIER, C. J., and WINANS and DOYLE, JJ., concur.

WOLLMAN, J., dissents.

WOLLMAN, Justice (dissenting).

I would affirm the judgment.

Instruction No. 6, to which no objection was made by plaintiff, permitted the jury to award severance damages for the depreciation in value, "if any you shall find," of the land remaining after the taking.

Why should the trial court have restricted severance damages to the quarter sections crossed by the easement when there was no request by the plaintiff that the jury should be so instructed? Plaintiff's expert testified that the total value of the ranch unit was $480,000 before the taking and $476,000 after the taking. In

2. The trial court gave the Pattern Jury Instruction for "condemnation of Private Property for Highway Purposes under the Power of Eminent Domain". The crucial Instruction No. 6 on severance was not even tailored to fit a highline case. It is stated in terms of before and after the "taking" instead of before and after the "imposition of the easement". No exception was taken by Basin Electric to these instructions; however, we feel that the giving of this instruction on the entire 5900 acre unit would be fundamental error as it is a highway severance damage instruction not even tailored to fit a highline easement case, and is not based on any evidence of pecuniary damage to the entire unit.

other words, plaintiff itself did not try the case on the theory that damages were restricted to the seven quarter sections crossed by the power line. I do not think that our decisions would have permitted plaintiff to do so. See, e. g., State Highway Commission v. Fortune, 77 S.D. 302, 91 N.W.2d 675; State Highway Commission v. Olson, 81 S.D. 401, 136 N.W.2d 233, and State Highway Commission v. Hayes Estate, 82 S.D. 27, 140 N.W.2d 680.

I agree that the verdict is certainly generous. On the other hand, we have stated that great latitude is allowed in the reception of evidence to prove the value of property in condemnation cases. State Highway Commission v. Hayes Estate, supra. The verdict was within the range of the testimony. All in all, I cannot say that the verdict appears to have been the product of passion, prejudice or partiality.