BASIN ELECTRIC POWER COOPERA-
TIVE, A Corporation, Plaintiff
and Appellant,

v.

Dr. Joe POINDEXTER, Defendant
and Appellee,

and

State of South Dakota and Faulk
County, Defendants.

No. 13136.

Supreme Court of South Dakota.

Argued Feb. 12, 1981.

Decided April 29, 1981.

John F. Murphy of Donley & Murphy,
Elk Point, for plaintiff and appellant.

George N. Manolis of Churchill, Manolis,
Wheeler & Freeman, Huron, for defendant
and appellee.

FOSHEIM, Justice.

This is an action in condemnation com-
menced by Basin Electric Power Coopera-
tive to obtain a perpetual easement over
certain parcels of land in Faulk County,
South Dakota, for the construction and op-
eration of an electrical transmission line.
The appeal is from a verdict for appellee,
Poindexter, assessing damages in the
amount of $55,000. We reverse.

Appellee's land consists of 35 quarters of
contiguous pasture land which he operates
as a 5600-acre unit. The transmission line
would be installed on 5 quarters of that

unit, or 800 acres. The easement is located near the northeast property line of the unit. It is 200 feet in width and involves a total right-of-way of 48.54 acres.

Appellee, who pilots his own plane, supervises his ranching operation by air. He based his estimated damages to his ranch unit completely on his particular method of operation. Appellee testified that he commences examining the pasture by plane at the boundary line of the 5600 acres and then proceeds throughout the pasture to observe his livestock and other matters that may need attention. He claims that the electrical towers and wires would adversely affect his ability to properly supervise the unit as previously done, and that this includes the entire pasture in diminishing degrees from the power line. He testified that the difficulties that would be engendered by the power line would diminish the value of the 5600 acres by $316,000. He indicated that his before market value of $350.00 per acre applies if the buyer were also a pilot. Ted Jennings, a rancher in the vicinity of appellee's land, testified for the defense. His opinion, based upon appellee's testimony, was that the entire 5600-acre unit would be damaged $25.00 to $50.00 an acre by the easement.

The trial court instructed the jury that the just compensation due appellee as the owner of the property is an amount of money representing the difference in the market value of the whole unit before it was condemned, taken, and damaged, and its market value after it was condemned, taken, damaged and put to the use for which it was condemned.

The jury was further instructed that the just compensation due the land owner is that amount reasonably intended to compensate the owner for payment of the fair market value of the specific land actually occupied by the steel structures, concrete and wires, plus the diminution in value of the balance of the right-of-way taken, together with the consequential damage to (if any), and the depreciation in value of, the remainder of the tract. In considering consequential damage to the remainder of the tract, the jury was instructed that the elements of damage must not be too remote, speculative, or uncertain.

Appellant contends that the instructions erroneously allowed the jury to assess consequential damages upon the entire 5600-acre tract when the only area shown by the evidence to be actually damaged was the five parcels consisting of 800 acres actually traversed by the transmission line. Appellant maintains that any evidence as to the rest of the tract was as a matter of law too remote, conjectural, and speculative to support consequential damages.

■ The only issue before the jury in a condemnation action is the amount of compensation to be paid for the property taken or damaged. SDCL 21–35–15. The measure of damages in cases involving a partial taking is the difference between the fair market value of the unit before the taking and the fair market value of what remains after the taking. *State Highway Commission v. Olson*, 81 S.D. 401, 136 N.W.2d 233 (1965); *City of Bristol v. Horter*, 73 S.D. 398, 43 N.W.2d 543 (1950). In *State Highway Commission v. Hayes Estate*, 82 S.D 27, 140 N.W.2d 680 (1966), we held·that in applying this rule, severance damage to the remaining property is included in an award without being designated as such. The amount allowed for the property actually taken is not segregated from the damage to the remainder:

In estimating the damages to the remainder, or in other words, the depreciation in value of the part not taken, the landowner is entitled to have the jury informed as to all those facts which legitimately bear upon the market value of the ranch before and after the taking and those factors which would ordinarily influence a prospective purchaser in negotiating for the property. The manner in which the ranch was used before the taking and the manner in which it can be used afterwards is of prime importance. Anything which is directly injurious to its particular adaptability or detracts from its use at maximum efficiency affects market value and is competent and a legitimate

factor in establishing total damages sustained within the contemplation of an award of just compensation.

82 S.D. at 34, 140 N.W.2d at 684.

■ Great latitude is allowed in the reception of evidence to prove the value of property in condemnation cases, and generally any relevant and material evidence, if competent under general rules of evidence, is admissible to prove market value. If the proffered evidence tends to aid the trier of fact in arriving at a conclusion on the issue of value and damage, it should be received. *State Highway Commission v. Hayes Estate,* supra.

In *Basin Electric Power Cooperative, Inc. v. Cutler,* 88 S.D. 214, 217 N.W.2d 798 (1974), the ranch unit in question consisted of 5960 acres. Basin Electric took an easement over a 54.26-acre area. There were to be 15 towers installed on the land. As in this case, the evidence established that the owner supervised the ranch operation and checked on his cattle with the use of an airplane and that the electric towers would present problems in so doing. The jury found that there had been a $5.00 per acre decrease in value for each acre of the entire 5960-acre unit, resulting in a total award of $29,800. In reviewing the award in light of *State Highway Commission v. Hayes Estate,* supra, we said:

There is nothing wrong with the rule laid down by the Court for determining just compensation for the landowner. The formula of determining the value of the ranch before the easement and the value of the ranch after the easement is well recognized in fee title cases. The problem here is that the rule does not fit the evidence. If the jury is to be allowed to make a determination of severance damage to the entire unit there must be evidence of damage to the entire unit. Severance is not "manna from heaven"; it must be based on actual loss of value.

There are no "bread and butter" items listed by any witness as to the loss for the entire unit. All of the land in the ranch can be used for the exact purpose it is now being used after the easement is placed on the land; and that is a cow-calf operation which according to the experts is also the highest and best use to which this property can be put. Admittedly there is no reduction in the number of cattle that can run on the land; there is no problem of the cattle being cut off from the main ranch, or from their water supply, or from their shelter as we sometimes have in controlled access highway cases.

The expert witnesses named the following factors that would cause damage to this property as a result of the easement. They specifically mentioned weed control, irrigation, trouble of checking the cattle with an airplane, and the fact that the towers would be an eyesore. All of these items just mentioned would refer to damage to the immediate area of the easement.

88 S.D. at 220, 217 N.W.2d at 801 (footnote omitted).

We further noted:

All this does not mean that the landowner has not sustained damage and substantial damage. A 150-foot perpetual easement across property, damages that property for the purposes of use and the sale; and it damages the unit of land cut by the easement. However, the severance damage in highline easement cases is localized damage which should be restricted by the Court to the 160-acre units that are crossed by this easement. Evidence of damage has been shown to these units which justifies severance damage. It has not been proved for the entire ranching unit.

88 S.D. at 221, 217 N.W.2d at 802.

About two years later in *Nebraska Electric Generation and Transmission Cooperative, Inc. v. Tinant,* 90 S.D. 284, 241 N.W.2d 134 (1976), we had occasion to construe that language:

Appellants argue that *Basin Electric Power Cooperative, Inc. v. Cutler,* supra, negates the unit rule of severance and substitutes a 160-acre unit rule as it relates to electrical highline easements. We do not so construe that decision.

While we acknowledged the concept of severance damages therein by quoting from *State Highway Commission v. Hayes Estate*, 1966, 82 S.D. 27, 140 N.W.2d 680, this court did not declare that "severance damages" which more appropriately should have been identified as "consequential" or "incidental" damages, see *State Highway Commission v. Bloom*, supra, [77 S.D. 452, 93 N.W.2d 572 (1958)] either may or may not be occasioned by such a taking but only held that "If the jury is to be allowed to make a determination of severance damage to the entire unit there must be evidence of damage to the entire unit." The evidence presented in that case referred to "damage to the immediate area of the easement." There was "no evidence of a carry-over to the entire ranch unit." 217 N.W.2d at 801.

90 S.D. at 290, 241 N.W.2d at 137.

In *Nebraska Electric Generation and Transmission Cooperative, Inc. v. Tinant*, supra, we reaffirmed that while there is no severance by an electrical highline, in the sense that there is no actual division of a parcel of land, consequential damages may nonetheless flow from such an interference with a farm or ranch unit.

"Generally, the owner is entitled to payment of the fair market value of the land actually occupied by the poles or towers, plus the diminution in value of the balance of the right of way taken, together with the depreciation in value of the remainder of the tract." " . . . The elements of damage [to the remainder] must not be remote, speculative or uncertain; they must be direct and proximate, and not such as are merely possible."

90 S.D. at 291–92, 241 N.W.2d at 138 (citations omitted).

█ In determining diminution in market value it is proper to take into consideration the expense necessitated by the nature of the easement to restore the remaining land to its most advantageous use, or in adjusting it to the changed conditions brought about by the servitude. *State Highway Commission v. Hayes Estate*, su-

pra; 27 Am.Jur.2d Eminent Domain § 314 (1966).

In the case of *In Re Platte Valley Public Power & Irrigation Dist.*, 133 Neb. 420, 275 N.W. 593 (1937) (cited with approval in *Basin Electric Power Cooperative, Inc. v. Cutler*, 88 S.D. at 221–22, 217 N.W.2d at 802), the utility took 78 acres from a 46,000-acre cattle ranch. In considering a per acre consequential damage award that had been spread to the entire unit the Supreme Court of Nebraska said:

If plaintiffs owned and exclusively used contiguous lands extending as far north as the Arctic Circle, reiterated testimony that such vast territory would be depreciated a dollar an acre in value by the works of defendant would be as unreasonable method of estimating consequential damages to lands not taken and not injured in any respect.

 . . . . 

. . . The jury were left free to find that all the land not taken was diminished a dollar in value on each acre, if the evidence so proved, though there was no proof that the summer pasture land in the sand-hills was of any less value for ranch purposes after the taking than it was before. There must be a limit to remote, unaffected lands that may be considered in estimating depreciation in their value by condemnation of contiguous lands taken for public purposes.

133 Neb. at 425–426, 275 N.W. at 596.

Public policy considerations for such limits are manifest. Without them, the condemnor could be required to pay for a portion of an entire large unit in order to obtain an easement over a small part thereof. The taking of private land for public use could thereby be defeated as cost-prohibitive, or those vested with the power of eminent domain would likely tend to route the right-of-way so as to unfairly burden small units.

█ Since great latitude is allowed in the reception of evidence to prove the value of property in condemnation cases, the testimony of appellee and his expert witnesses, as to consequential damages, was entirely competent. When, however, that evidence

indicated that the claimed consequential damage was localized, the trial court should have restricted consideration of market value loss to the immediate 160-acre units crossed by the highline. In this case, as in *Basin Electric Power Cooperative, Inc. v. Cutler,* supra, the facts did not show "bread and butter" carry-over damage to the entire ranch unit.

The judgment is reversed.

DUNN and MORGAN, JJ., concur.

WOLLMAN, C. J., and HENDERSON, J., dissent.

WOLLMAN, Chief Justice (dissenting).

I agree generally with everything said in the majority opinion but the holding that there was no evidence of damage to the entire unit. The testimony presented by appellee and his witnesses, conceded by the majority opinion to be competent, presented a jury issue on the question of consequential damages to the entire unit resulting from the easement. This testimony revealed that because of the rough terrain, which ranged from marshy areas covered by high reeds to boulder-strewn hills and knolls, it is extremely difficult to monitor quickly and efficiently the 1000-cow herd that the unit is capable of supporting other than by means of a small plane. Appellee may well have over-emphasized the extent to which the transmission line would interfere with his aerial monitoring of the unit. When one considers the terrain and the generally rectangular shape of the unit, however, appellee's argument that an east-west flight pattern is the most efficient method of surveying the unit is not so implausible as not to form the basis for a finding of damages to the entire tract. In any event, the jury obviously discounted the adverse impact upon the market value of the entire tract outlined in appellee's testimony.

After considering the evidence as a whole, I am satisfied that the trial court correctly applied the rule laid down in *Neb. Elec. Generation & Trans. Co-op. v. Tinant,* 90 S.D. 284, 241 N.W.2d 134 (1976), and

*Basin Electric Power Cooperative, Inc. v. Cutler,* 88 S.D. 214, 217 N.W.2d 798 (1974). Accordingly, I would affirm the judgment.

I am authorized to state that Justice Henderson joins in this dissent.