CHICAGO, M. & ST. P. R'Y. CO. V. BRINK.

1. Where a railroad company had previously condemned a right of way and in a subsequent proceeding to condemn additional strips to widen it the court charged that the jury should not allow the landowner for the present injuries the railroad was inflicting or would in the future

inflict, and should only allow compensation for the additional land taken and the injury that would result therefrom, it will be presumed on an appeal from the award, in the absence of a showing to the contrary, that no damages were awarded on account of the construction of the road itself.

2.  In a proceeding to condemn an additional strip of about 3 acres on each side of a railroad's right of way, it appeared that defendant's remaining land was separated from the railroad by two fences which it would be necessary to remove, and which defendant testified were valuable in keeping his stock from the track.  Defendant and other witnesses testified that the difference in market value of defendant's farm before and after the taking of such additional strips was "$500 and more."  The only evidence as to the value of the land produced by petitioner was that defendant's farm and other land in the neighborhood, when sold as a whole, was worth from $35 to $50 per acre.  Held, that an award of $400 was not excessive.

(Opinion filed April 7, 1903.)

Appeal from circuit court, Union county.  Hon. JOSEPH W. Jones, Judge.

Proceedings by the Chicago, Milwaukee & St. Paul Railway Company against Bennett H. Brink for the condemnation of land.  From an award in favor of defendant, plaintiff appeals.  Affirmed.

*R. B. Tripp,* for appellant.

*Ericson & Stickney,* for respondent.

CORSON, J.  This is an appeal by the plaintiff from a judgment in condemnation proceedings awarding to the defendant $400 damages and costs.

The plaintiff, for a number of years, has had and used a right of way over the land of the defendant, 18 feet in width, 9 feet on each side of the center of the track.  This right of way across the defendant's land extends easterly and westerly

parallel to an old highway. and the plaintiff company deemed it necessary to take two strips about 24 feet in width, one embracing the land between its present right of way and the highway, and the other on the southerly side of its right of way, making its right of way 66 feet in width. The defendant's residence is on the northerly side of the highway, and between his residence and the railroad there are two fences, one constructed by the railway company, along its original right of way, and the other by the defendant along the south side of the highway, enclosing a strip about 24 feet in width and about 1,500 feet in length. The amount of land sought to be condemned was a fraction less than two acres, and the price of land in that vicinity was shown to be from $35 to $50 per acre. It is contended on the part of the appellant that the verdict of the jury was excessive, and that it evidently disregarded the instructions of the court in finding a verdict in favor of the defendant for $400, and this presents the only question to be considered on this appeal.

The appellant insists that inasmuch as the plaintiff had a right of way over the defendant's land, of which it had been in possession for many years and over which it had daily run its trains, the defendant could not recover in this proceeding any damages on account of the construction of the railroad itself. and the inconvenience it might cause him. This is undoubtedly correct, and such, evidently, was the view of the learned circuit court, for in its charge to the jury, after calling its attention to the facts that the railroad company had previously acquired the right of way across the land to the extent of 18 feet in width, and now sought an additional right of way to the extent of 24 feet on each side of its present right of way,

it says: "Evidence has been introduced in regard to the value of these two strips of land, and the question to be submitted to the jury is, what is the fair and just compensation to be awarded Mr. Brink, the owner of those two strips of land, for appropriating them to the use of the railroad company in this proceeding? Mr. Brink is entitled to a fair and just compensation for the damage resulting to him by reason of the taking of these two different strips of land, and widening of the right of way from 18 to 66 feet. The question is one of the compensation merely. The defendant is not entitled to anything beyond a fair and reasonable compensation for the taking of the land. The amount of land would be something less than two acres. You are to determine what he should have for the taking of that land." Again, the court instructed the jury: "The railroad company now has a right of way 18 feet wide, nine feet from the center of the track in each direction; so that you are not to allow Mr. Brink for the present disadvantage and present injuries that the railroad company is now inflicting or would in the future inflict on the right of way on Mr. Brink's premises by the reason of its being there. But you only are to allow compensation for the additional amount they take, and the injury that would result to his farm by reason of the taking of additional land. You will not allow anything at all for compensation for the land they have already taken, because they now own that, nor for the inconvenience that the railroad, as it now exists there, under the present circumstances causes Mr, Brink and his farm, but simply for the additional damage that results by reason of taking twenty-four additional feet on the north side and the same amount on the south side of the track."

It will thus be seen that the jury was limited in its verdict to the damages the defendant might sustain by reason of the taking of these two additional strips, that is, the value of the land actually taken and the damage caused to the balance of his land by such taking.  Schuler v. Board of Supervisors, 12 S. D. 461, 81 N.. W. 890.  It is clear from the evidence that the defendant would necessarily sustain some damage in addition to the value of his land by the removal of the fences between the highway and the railroad.

The contention of the appellant, we think, is untenable for two reasons: First.  This court will presume, in the absence of any showing to the contrary, that the jury followed the instructions of the court.  Second.  There was no evidence offered on the part of the appellant showing that the value of these two strips of land, or the amount of damage the defendant would sustain by reason of the taking of the same; and substantially all the testimony there was upon this subject was given by the defendant, and this was the only evidence that the jury had upon which to base its verdict.

The defendant, when on the stand as a witness in his own behalf, testified very fully as to the value of the land by reason of the fences between his residence and the railroad track, and the necessity for their removal if the land was taken by the company, and the liability of his stock to go upon the track and be injured by the trains after such removal.  He was then asked the following question: "You may state what would be the difference in the market value of your farm as it now is and as it would be after taking the strips as proposed to be taken by the railroad company.  A. $500 and more." Again, he says: "I think the value would be diminished to the

extent of $500 by the taking of these two strips on the northerly and southerly side." Again, he says this land is of greater value the way it is than any other place on the farm, because it is well fenced, and protects, as far as the fence goes, the stock from going onto the track.

Mr. Walker, a witness for the defendant, testified that he had lived about 60 rods from the defendant for the past 10 years, and was acquainted with the value of land in that vicinity. He was then asked the following question: "What, in your judgment, is the fair market value of the land that they propose to take, having regard to its present location and condition?" to which he answered, "About $500." He was also asked the following question: "What, in your judgment, would be the difference between the value of the farm as it now is with the railroad over it, and with Mr. Brink owning these 24 feet strips on each side, and the value of the same farm with the railroad across it and the road owning these two strips?" to which he answered, "$500." This witness also testified that the market value of the land in that vicinity was about $40 per acre, but he says, "I speak about the whole entire farm as land sells in that neighborhood." Other witnesses on the part of the defendant gave substantially the same estimate of the value of the strips proposed to be taken, and the difference in the value between the strips of land as owned by the defendant and the same as owned by the appellant, taking into consideration the moving of the fences and the greater danger to defendant's stock by reason of such removal.

It is true there was some evidence introduced on the part of the appellant tending to prove that the value of the land in that vicinity was from $35 to $50 per acre, but this price was

16 S. D.—42

fixed with reference to a quarter section, and not to  the strips of land proposed to be taken by the appellant.

A. O. Ringsrud, a witness on the part of the appellant, testifies: ''I know in a general way the fair market value of the land * * *   The fair market value of the farm where the road crosses, per acre. is $40, in my judgment.  I refer to the value of the entire farm as a whole.  I do not refer to the value of any detached piece or portion of it.  I have stated what I consider the value of the farm of 160 acres. ''

. ' Other witnesses on the part of the appellant gave similar evidence.  The witnesses do not give or pretend to give the value of the two strips of land independently of the whole farm or quarter section, and no evidence was given, so far as we can discover from the record in this case, on the part of the appellant, tending to prove the difference in value of the farm in its condition before the taking of these strips and after the taking.

It will be observed that the appellant's evidence was not such as to furnish any data for the verdict of the jury.  Of course, no person would be willing to sell a strip of land through the center of his farm at the same price per acre as he would be willing to sell the whole farm for, especially as that strip was fenced in such a manner as to protect the stock of the owner from the dangers incident to the running of trains through the farm.

In view, therefore, of the evidence on the part of the defendant, the jury could not well have found any less verdict than that returned by it.   The jury, in fact, had no basis for any other verdict.  This court held, in Schuler v. Board of Supervisors, supra, that a party whose land is taken under condemnation proceeding is entitled to recover, not only for

the value of the land actually taken, but for the damage the remaining land sustains by reason of such taking, and that the true measure of damages in such case is the difference between the value of the farm or tract of land before the portion is taken and its value after the same is taken. This court called attention to the fact that the constitution of this state (Searle v. City of Lead, 10 S. D. 312, 73 N. W. 101, 39 L. R. A. 345) is quite different from the constitution of many of the states, in that it provides. " private property shall not be taken for public use or damaged without just compensation as determined by the jury." Section 13, art. 6, state const.

While it is true, as contended by the appellant, the witnesses on the part of the defendant seem to have included, as a basis of their estimate of the difference of value between the farm as it was and would be after the strips were taken by the appellant, some incidents which would only be applicable if the appellant was taking the right of way through the farm for the first time, yet we must presume, under the instructions of the court, that the jury disregarded the inadmissible evidence and only considered such facts and circumstances as, under the instructions of the court, were proper to be considered in arriving at its verdict. As we have seen, the proper question was asked the witnesses, and their answers were clear and specific. As the verdict of the jury, therefore, was less than the amount stated by the witnesses as the damages sustained by the defendant, there is no ground for claiming that the verdict is excessive.

We are of the opinion, therefore, that the circuit court was right in denying a new trial, and the judgment and order denying the same are affirmed.