## MILLER et al. v. UNITED STATES.
### No. 471.

District Court, W. D. Pennsylvania.
Feb. 13, 1943.

Harvey A. Miller and Miller & Nesbitt, all of Pittsburgh, Pa., for plaintiffs.

Chas. F. Uhl, U. S. Atty., of Pittsburgh, Pa., Jos. F. McPherson, Sp. Asst. Atty., Department of Justice, of Washington, D. C., and James Boyer, of Monongahela, Pa., for defendant.

SCHOONMAKER, District Judge.

This proceeding arises out of a land condemnation case wherein the United States condemned certain lands for the purpose of erecting and maintaining the Loyalhanna Creek Flood Control Dam in this District.

In the course of these proceedings, the United States acquired title by condemnation proceedings of approximately one hundred and four acres of land belonging to the estate of Wilbur P. Graff, of which land approximately fifty-six acres were underlaid with coal. The land so taken was a part of a larger tract of four hundred and ninety acres owned in fee by the Graff Estate, and approximately thirty-five hundred acres of land in which the Graff Estate owned the coal-mining rights.

In the condemnation proceedings, viewers were appointed. These viewers awarded the Graff Estate damages for the land and coal so taken in the sum of $12,-200.05. The Graff Estate appealed from

this award, and an issue was framed for the trial of the Graff's Estate claim for damages before this court and a jury. At the trial of this issue, the jury awarded the Graff Estate a verdict against the United States for $28,429.83. The United States moved for a new trial, and this court granted this motion unless the Graff Estate would agree to reduce the verdict to $18,-000. This proposed reduction was refused by the Graff Estate. The case came on for trial the second time, with the result that the jury on the second trial returned a verdict in favor of the Graff Estate for $12,-000.

The Graff Estate moved for a new trial, assigning eleven reasons therefor; but on the argument of the motion, counsel for the Graff Estate urged only the following five reasons therefor:

1. The verdict is against the overwhelming weight of the evidence.

2. The jury disregarded the instruction of the court in rendering an arbitrary verdict inconsistent with the evidence.

3. The court erred in excluding testimony of water hazard as affecting the fair market value of the Graff Estate properties.

4. The court erred in overruling plaintiff's objections as to the cross-examination of witnesses as to their testimony before the Board of Viewers.

5. Under the record generally the plaintiff is entitled to a new trial.

■ As to points 1 and 2, we cannot say that the verdict is overwhelmingly against the weight of the evidence and the instructions of the court, leading us to grant a new trial in this case. There is evidence that will sustain the verdict. The mere fact that the verdict might be against a preponderance of the evidence is not a sufficient ground for granting a new trial. Weed v. Lyons Petroleum Co., D.C., 294 F. 725, 732 (Morris, D. J.), affirmed, 3 Cir., 300 F. 1005, on opinion of court below.

■■ In addition to the testimony given in court, we have the fact that the jury in this case went out to view the premises, and could exercise its own judgment derived from that view, as well as from the evidence given in court. This is pointed out by Mr. Justice Lurton in Columbia Heights Realty Company v. Rudolph; 217 U.S. 547, on page 560, 30 S.Ct. 581, on page 586, 54 L.Ed. 877, 19 Ann.Cas. 854, as follows: "The power of the court to review the award by such a jury must, in the very nature of the matter, be limited to plain errors of law, misconduct, or grave error of fact indicating plain partiality or corruption. The jury saw and heard the witnesses; the court did not. The jury went upon and viewed the premises; the court did not. The duty to review did not involve mere error in judgment as to the extent of enhancement in value, for the judgment of the jury manifestly rested upon much which could not be brought before the court. The jury was expected to exercise its own judgment, derived from personal knowledge from a view of the premises, as well as from the opinion evidence which might be brought before them. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170. See also Murray v. United States, 76 U.S.App.D.C. 179, 130 F.2d 442; Willis v. United States, 69 App.D.C. 129, 99 F.2d 362, 365.

In this case, there was a sharp issue of fact as to whether or not the Government, in taking the land it did take for this flood-control dam, deprived the Graff Estate of the most possible entry into the coal underlying the lands adjacent to the dam site. The Graff Estate contended that the only feasible method of mining the coal vein here involved, was by drift entry, and that the only available place therefor was on the particular lands taken by the Government for the dam site. On the other hand, the Government contended that the balance of the coal field owned by the Graff Estate was not affected by the construction of this dam at all, because there was approximately two thousand feet of out-crop coal remaining in the area not taken by the Government, with proper tipple height, sufficient waste area, where a drift entry could be made into this coal at some distance below the dam site, and near to the center of the coal field. In addition to that, there was evidence offered by the Government that the method of drift mining is not the only way of getting this coal out of the ground, that a shaft entry into this coal at a point on Girty's Run might be made, through which this coal might be mined to better advantage than by a drift opening. In addition to this, there was evidence that the location of the dam neither contributed to, or detracted from, the value of the Graff Estate coal lands, and would have no effect on the mining of the coal lands remaining in the Graff Estate.

164

On this evidence, if believed by the jury, they could properly find that the only damage suffered by the Graff Estate was the fair market value of the land and coal actually taken.

We therefore cannot find that the verdict in this case is against the weight of the evidence, or that the jury disregarded the instructions of the court.

Next, as to the alleged error in excluding testimony of water hazard. There was testimony of the witness Young (pages 124–126) as to possible water hazard. This testimony was brought out as a result of cross examination of the witness by Government counsel.

However, we did exclude the testimony of witness Hinks (R. p. 140) that the water in the dam would be a material mental hazard, and also the testimony of witness Coleman (R. p. 50). We see no error in this rule. We cannot see how mere fear that the dam might give way can have any effect on the value of coal lands remaining in the Graff Estate. It certainly is a speculative fear and not based on any affirmative testimony that the dam impounding the water is, or will be, improperly constructed. See Illinois P. & O. Corp. v. Cooper, 322 Ill. 11, 17, 152 N.E. 491.

Next, counsel for the Graff Estate urge that the court, erred in overruling their objection to the cross examination of witnesses as to their testimony before the Board of Viewers. This point relates to the testimony of two witnesses, Coleman and Cunningham, who testified before the viewers in this case. Witness Coleman (R. pp. 58, 59) was asked by Government counsel on cross examination: "Q. Do you now have any notion what the areas condemned by the Government were worth per acre with the coal in place?" This question was objected to by counsel for the Graff Estate as not cross examination of witness as to his previous testimony. This objection was overruled and the witness answered: "The coal itself would be worth about $75 an acre and the surface about $50 an acre."

We cannot see that any harm was done the Graff Estate by this ruling. Counsel for the Graff Estate contended that the testimony before the viewers was taken on an improper measure of damages, i. e., the value of the land taken. If there was any explanation of the witness's testimony, as given before the viewers, counsel for the Graff Estate could have brought that explanation out by re-direct examination of the witness. However, this witness, on further cross examination, stated clearly that his testimony at this trial related to the whole thirty-five hundred acre tract, and that a willing buyer would give $100,000 less for it after the one hundred acres had been taken out by the Government (R. p. 60). And I cannot see that the jury could have been misled as to what this witness testified to as to damage accruing to the plaintiff.

The same situation prevails as to the witness Cunningham, who was cross examined (R. pp. 93, 94) as to his testimony before the viewers, and needs no further comment.

As to the final reason offered by the Graff Estate for a new trial that he is entitled to a new trial on the record generally.

An examination of the entire record convinces us that there is no merit in this contention.

The motion for a new trial will be denied.