## Petroleum Exploration, Inc. v. Hensley et al.

May 23, 1950.

Ray C. Lewis, Judge.

E. C. O'Rear, Roy W. House and Allen Prewitt for appellant.

John D. White for appellees.

JUDGE KNIGHT—Reversing.

In a former appeal involving the parties to the present suit, it was determined that appellant was entitled to condemn an easement through the property of appellee for the purpose of laying a pipe line for the transmission of gas for public use. That case is reported in 308 Ky. 103, 213 S. W. 2d 262. The sole question involved in the present appeal is the amount which appellant should pay appellee for the easement. The commissioners, who were appointed by the county court to view the land and assess the damages, fixed the value of the easement at $175, i.e., $75 for the easement and $100 as incidental damages. An appeal was taken to the circuit court and, on a trial before a jury, appellee was awarded $200 for the easement and $600 incidental damages, a total award of $800. Appellant is appealing from the judgment based on that verdict and is seeking reversal solely on the ground that the verdict is excessive.

The land owned by appellee contains 86 acres and is divided into two tracts by Goose Creek. The tract on the left side of the creek, going down the creek, contains 56 acres and the one on the right side contains 30 acres of which about one-third, or 10 acres, is bottom land suitable for cultivation. The other two-thirds, or 20 acres, is timbered. The 10 acres of bottom land are subject to overflow at times from high water in Goose Creek. The easement is through this 10 acres of bottom land, near its center, so far as we can tell from the evidence. The easement is 30 feet wide and 882 feet long, 200 feet of which are up a ravine and the face of a cliff, and the remaining 682 feet are through the bottom land. The pipe which carries the gas is approximately 6½ inches in diameter and is buried approximately two feet under the surface. The only visible evidence of the pipe line is the slight ridge left after the filling in and this is expected to level off as it settles. Appellee has the full right to cultivate over the ease-

ment and use it in any way which will not interfere with appellant's access and use of it for its purpose. He may build fences and roadways across it, but erect no buildings on it. Included in the easement is the right of appellant to construct, maintain and operate a telegraph or telephone line to use in connection with the operation of its gas line. The easement is patrolled with some regularity by a line walker to detect any leaks that might develop in the line.

It is shown by testimony of appellee that his entire tract of 86 acres is assessed at $3,700, including $600 improvements on the 56 acres on the left side of the creek, there being no improvements on the 30 acres through which the easement runs. This leaves the land value at $3,100 and since land in Clay County, according to his testimony, is assessed at about 40% of its market value, the value of the 86 acres unimproved would be $7,750 or an average of approximately $90 per acre. Since the easement taken contains 6/10 of an acre, a strict calculation of the fee value of the land taken would be about $72. But the fee-simple title has not been taken; the owner may use and cultivate the surface of the land subject to the right of the company to enter thereon and do all things necessary to maintain the pipe line in question, However, consideration must be taken of the fact that the easement is through the bottom land which can be cultivated, an important element on small mountain farms, while the $90 per acre valuation on the farm as a whole covers also waste land, hill land, and uncleared land. There was also testimony by appellee that in the line of the easement is a building site, the only one, according to his testimony, suitable or convenient for a building site on the 30 acre tract. This site was formerly occupied by a school house, was later used for a residence, which was subsequently torn down, and is now not occupied by any building, but has remained as a potential site for building. In connection with this building site and within the easement is a drilled well which was covered up in the laying of the pipe line. There is evidence that this well is sealed over and can again be opened up, cleaned out and used, but that will entail costs. The only testimony as to the value of this well was that of appellee who said: "They covered up a well that would cost a man $100 to drill, taking it at $2.00 a foot."

Considering the testimony on this phase of the case, that the easement is through the bottom lands, and considering that the damage to or loss of the well and loss of the building site is part of the direct damage in the taking of the easement, we are of the opinion that the sum of $200 allowed by the jury for this item is not excessive.

On the contrary, we are of the opinion that the award of $600 incidental damage was not sustained by the evidence. The incidental damages contemplated in condemnation suits of this character are fully discussed in the recent case of Tennessee Gas & Transmission Co. v. Jackman, 311 Ky. 507, 224 S. W. 2d 660, and other companion cases cited on adjacent pages of the same volumes. It refers to the right of ingress and egress over the remainder of the farm which, whether exercised or not, imposes a burden on appellee's proprietary interest and control of his estate. Such infringement on the domain, in itself, is such a burden as reasonably may be calculated to decrease the marketable value of the property on which the burden has been placed. It is, therefore, one of the elements of damages to be considered in estimating the difference in the market value of the property immediately before and immediately after the acquisition of the easements.

Appellee appears to have considered as part of this incidental damage the use of a private road by the contractor who laid the pipe line and testified that he had been damaged in the sum of $200 by the use of this road for the purpose. There was no proof to show how this $200 damage was arrived at except the bare statement of appellee that the road was damaged in that sum; no proof that appellant directed or attempted to authorize the independent contractor to use the private road. Any damage to this road would have to be recovered under a special plea or in a suit against the contractor. We think it is not a proper element of incidental or resultant damages arising out of the taking of the easement in this case and proof concerning it should not have been allowed to go to the jury.

The only proof of incidental or resultant damages produced by appellee was his own testimony. Asked as to the value of the 30 acre tract before the pipe line was laid there, he answered: "About $6,000"; and asked as

to its value after the line was laid, with the restrictions imposed by the easement, he answered: "I would say the 30 acres are not worth $4000 now"; therefore placing his damage at $2,000. No facts or circumstances were given to support these figures and therefore they are of little or no probative value. Warfield Natural Gas. Co. v. Laferty, 232 Ky. 248, 22 S. W. 2d 611.

This case was tried before this court rendered its opinion in the case of Tennessee Gas & Transmission Co. v. Jackman, and companion cases referred to above, in which the latest expressions of this court on such condemnation cases are found. Since the case must be reversed because of excessive damages, the principles laid down in the Jackman and companion cases should be followed if this case is again tried.

The judgment is reversed for proceedings consistent with this opinion.