**LYONS et al. v. UNITED STATES.**

Civ. No. 5510.

United States District Court
W. D. Pennsylvania.

Aug. 3, 1951.

Ernest C. Reif (of Dickie, McCamey, Chilcote, Reif & Robinson), Pittsburgh, Pa., for plaintiffs.

Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., and Charles F. MacMullen, Washington, D. C., for defendant.

MARSH, District Judge.

This is an eminent domain case. An Associate Judge of this court sent the jury to view the premises involved and the case was assigned to this court for trial. The jury returned a verdict of $15,000 in favor of the plaintiffs. In my opinion, the verdict is clearly excessive and should be reduced.[1]

The factual situation considered in a light most favorable to the plaintiffs is as follows. Plaintiffs are two elderly maiden ladies whose ancestors have owned the farm involved since revolutionary days. The property is situated in Indiana County about one mile from Saltsburg, Pennsylvania, and contained 103 acres. The vicinity is entirely rural and the terrain is "hilly." The United States, on the 11th day of March, 1946, condemned 24.73 acres, later reduced to 24.615 acres, for the purpose of relocating the Conemaugh Branch of the Pennsylvania Railroad made necessary because of the Conemaugh Flood Control Dam.

The farm house is about 100 years old and contains none of the modern conveniences. There is an old barn and the

---

[1.] Compare with Miller v. United States, Civil Action No. 471, (D.C.W.D.Pa.1942) where it appears that about 100 acres of land containing coal were condemned in Loyalhanna Township, Westmoreland County, which is adjacent to Conemaugh Township, Indiana County, where the land in the instant case is situated, a jury verdict of $28,420.83 was reduced to $18,000 by the court. A verdict in the second trial of $12,000 was affirmed; (D.C.W. D.Pa.1943), 54 F.Supp. 162, affirmed 3 Cir., 1943, 137 F.2d 592.

usual outbuildings. None of these buildings were taken. Water seems to be available. A stand of hardwood timber was condemned and cut down. The maximum estimate of timber available for sawing purposes was 175,000 board feet. The balance of the land was used for pasture or cultivation. One of the plaintiffs tried to farm the land and the other kept house.

The Indiana-Blairsville Highway, running generally East and West at that point, intersects the farm. The portion condemned is a strip 400 feet wide and approximately 2,500 feet long running generally North and South, and diagonally intersecting the farm, leaving about 55.44 acres on the side where the buildings are erected and 23.11 acres on the other side.

A tunnel was constructed under a portion of this strip which construction destroyed a waterfall and the timber. Plaintiffs' use of the surface overlying the condemned strip has not been interfered with since the condemnation. Nevertheless, plaintiffs claim severance damage because their use of the condemned surface is subject to the will of the railroad.

The evidence indicates that the Upper Freeport vein of coal underlies the property; that this is a general purpose coal; that to remove same the deep mine method is required; and that there is such a mining operation on adjoining land. There was evidence that the vein would produce a maximum of 1,400 tons for each foot of thickness per acre; that the maximum thickness of this vein on the adjoining property is 42 inches, although it is variable. It is also in evidence that there are two deeper veins of coal in this vicinity, neither of which has ever been mined.

Although there was reserved to the plaintiffs the right to drive two sets of entries through the coal contained in the strip in order to afford underground access from the coal on one side of the condemned strip to that on the other, it was testified that these entries as specified were inconvenient, that their construction might prove expensive because of "local dips" which might fill with water, and that, therefore, the market value of the remaining coal in the farm was adversely affected. In other words there would be a severance damage insofar as the remaining coal was concerned.

The United States has moved for a new trial, urging that the verdict is excessive; against the weight of the credible evidence; and, because of errors of law occurring at the trial.

■ The amount of compensation to be awarded for the taking is the difference between the market value of the farm prior to the taking and the market value of the farm after the taking.

The Misses Lyons testified that the value of their property before the taking was $42,000, and afterwards was $14,000, and that, therefore, the damage was $28,000. Their real estate expert, West Brown, testified that the market value before the taking was $35,000, and afterwards $11,740, and that the damage was $23,360 (sic). The Government experts valued the property before the taking at $10,000 and $11,000, respectively, and after the taking at $6,000 and $7,400, respectively, with the resulting damage estimated at $4,000 and $3,600, respectively.

As is usual in cases of this sort, the plaintiffs and their witness grossly exaggerated the damages and the defendants' witnesses minimized them, but with more regard for realities.

■ Obviously, the Misses Lyons were not testifying to market value, and the weight of their evidence, though competent, is trifling.

■ As to West Brown, counsel for the Government contends that he was not a competent witness because his opinions were not based upon knowledge of sales in the vicinity of the subject property. The Government's objections at the trial were overruled. We thought then and think now that this testimony was competent. It is not always essential that opinion witnesses have knowledge of specific sales. Montana Railway Co. v. Warren, 1890, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681; 3 Wigmore on Evidence, 3rd Ed. Sec. 714.

Brown testified that he had been in the real estate business for fifty years and had done considerable appraising of both rural and city land for various corporations, railroads and insurance companies as well as the Government. His testimony reflects that he did real estate appraisal work for more than forty years. This work embraced rural districts in Westmoreland, Fayette and Allegheny Counties, in addition to city properties. His testimony and the inferences therefrom establish the fact that he was familiar with farm properties containing coal and gas. He testified that he had known the subject property for more than twenty-five years, since his family owned a large farm near Alexandria within ten miles of the farm owned by the plaintiffs. This witness described the property before the taking and established his knowledge of local timber and coal conditions, with particular reference to the Freeport coal. He testified as to the various elements which he took into consideration in arriving at the market value. He saw the property in the summer of 1946 and looked at it last about two or three weeks before the trial. He stated that he considered and made inquiry about sales and holding prices in the neighborhood of this farm. He stated further that he made sales of comparable farms himself in 1944 and 1945 just over the line in Westmoreland County and that he had a list of the sales mentioned by the Government and had considered them.

Upon cross examination the weight of this witness' opinion, in the mind of the court, was nullified. He obviously knew nothing of selling prices of other property in the vicinity. He stated on direct examination that he did not find any comparable sales in the immediate neighborhood. There were at least four sales in the immediate vicinity of the subject property, either in the year 1946 or within a few years thereof. In these sales, comparable land ranged in price from $27.50 to $52.70 per acre.

It thus appeared that Brown did not know the value of comparable property of the same class in the vicinity. He displayed a complete lack of knowledge of general market value,[2] which knowledge is essential to carry more than a scintilla of weight. In my opinion, his testimony carried no more weight than the testimony of the owners. The basis of his opinion of market value was a guess, rather than one based upon knowledge of general selling prices of land in the neighborhood at the time. That Brown did not have this knowledge is evident both from his testimony and in his valuation. He completely departed from sales in the vicinity as a basis for his opinion.

I have taken into consideration the fact that farm lands obviously do not have an exact identity. I realize that in appraising farm land there is no uniform or absolute market value which is conclusively fixed by other sales, such as is the case, for example, with corporation stocks and securities listed upon an established exchange. Also the terms of payment frequently affect the prices. But whenever the fair market value can be ascertained by sales of land of like quality, similarly situated, or by recent sales of land in the vicinity, this guide should not be departed from. Obviously, where market value is the test, knowledge of sales and market conditions in the vicinity is essential; otherwise, the opinion is either based on some other measure of value such as use value or special value to the owner, or it is a mere guess and not a well informed guess. Cf: Miller v. United States, 1942, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336. By these standards Brown's opinion of market value of the Lyons farm is baseless.

In view of the foregoing considerations, I am of the opinion that the verdict is clearly excessive and contrary to the weight of the evidence, and it would not be right or just to let it stand. See Murphy v. United States District Court for the

2. On cross examination Brown stated that he knew of several sales but stated that "I couldn't get the price of that sale off them" or "I don't know the consideration."

Northern District of California, Southern Division, 9 Cir., 1944, 145 F.2d 1018. And this is true despite the fact that the jury viewed the premises. 29 C.J.S., Eminent Domain, § 310. The motion for a new trial will be granted unless plaintiffs, by writing filed within fifteen days, agree that the verdict shall be reduced to $10,000, and that the defendant within ten days thereafter agrees that judgment may be entered on that verdict. In determining the amount of remittitur, I have considered the evidence as to selling prices of neighboring farms in and around 1946 and the market value of the subject property before the taking in 1946 as estimated by the Government experts. It is a singular circumstance of this case that the estimates of the Government experts of the market value of the farm before and after the taking were far in excess of the per acre selling prices of neighboring properties of which they were informed. No specific reasons were assigned by them to explain the variance. It is my considered judgment that if the remittitur is approved, the plaintiffs will be justly compensated for their loss.