STATE HIGHWAY COMMISSION, Appellant v. OLSON et al., Respondents

Respondents

(136 N.W.2d 233)

(File No. 10178.   Opinion filed July 7, 1965)

**Frank L. Farrar,** Atty. Gen., **Richard A. Duncan,** Sp. Asst. Atty. Gen., Pierre, for plaintiff and appellant.

**Whiting, Lynn, Freiberg & Shultz, Horace R. Jackson,** Rapid City, for defendants and respondents.

BIEGELMEIER, J. This is a condemnation proceeding. References to defendants are to the Olsons as they are the owners of the land and the only parties who appeared. They own eight quarter sections of land in a unit referred to as 1179 acres which they purchased in 1956. A description and the location of this land will be helpful. Three of these quarter sections lie in an east and west tier. Along the south side of these quarters is black topped U. S. Highway No. 12 which separates the above quarters from the south five quarters. The latter are not in one block; rather they are adjacent as Olsons own one quarter just south of the middle quarter of the tier of three above mentioned; they rent the quarter just west of it and own the quarter west of that. The other three quarters join these on the south. It would be seen therefore that Highway 12 divides this unit with 480 acres on the north side of the highway and the balance of 700 acres on the south side.

The buildings and a stock dam are on the east quarter of the three quarters lying north of Highway 12. This quarter and those south of Highway 12 are mainly pasture land. The west two quarters north of Highway 12 are cultivated land. This unit of 1179 acres will be referred to as the home place. Olsons also owned 480 acres of land which they purchased in 1960; it is 15 miles west of the home place.

In 1941 the then owner of the middle quarter of the three north of Highway 12 conveyed a 100 foot strip of land of over eight acres to the State of South Dakota for highway purposes which ran diagonally from the southeast corner of that quarter section to the northwest corner. No highway had been constructed and Olson continued to farm it during the intervening years. As this deed was recorded when Olsons bought the land, their purchase was subject to this right-of-way conveyance to the State. In the present action the State is taking a strip of land 50 feet wide on both sides of this previously acquired right-of-way, being an additional eight or nine acres. The jury returned a verdict of $4,600. From a judgment entered thereon the State appealed. As the record contained no assignments of error the judgment was affirmed. State v. Olson, 81 S.D. 237, 132 N.W.2d 927. In a petition for rehearing the State asked and was granted permission to return the record to the trial court for correction to include assignments of error which had been served but omitted therefrom. The appeal is now before us on the merits.

I. The State claims the lower court erred in admitting testimony with reference to damages to Olsons' land which included the west 480 acres. In answer to a question as to the market value of his farm "as it stood before they decided to build this highway", Mr. Olson testified his whole joint unit, as he called it, of 1659 acres was worth $65 an acre, and that it was worth $60 an acre "after the highway goes through", making the damage $5 per acre over the 1659 acres or $8,295. Objections made to this evidence were overruled and motions to strike it denied. In support of this evidence it is said that sufficient foundation was laid to show that these two separate tracts of land were operated and farmed as one unit. The evidence to support unity

of use showed crops and hay from the 480 tract were hauled to, stored, and fed to cattle at the home place, and that Olson traded allotments of corn and feed base back and forth from one tract to the other.

The owners' witness Lerud likewise testified as to damages using the 1659 acre figure as his base. On a motion to strike this evidence for the reason that the 480 acres 15 miles west was not contiguous to this unit and no unity of use was shown, the court stated there was no requirement that it be contiguous and under model conditions land could be used 100 miles away and be a part of the same unit. "It is the use to what you put it. It is not where it is. The motion will be denied". The evidence of witness Knudson likewise was based on this 1659 acre figure.

■ Objections had been made to tying the two tracts together; they were overruled. Motions to strike were denied. As to these, counsel for defendant stated to the court and overheard by the jury: "we can show a unity of use. It is all part of one operation", to which the court said: "Proceed." That there would be no mistake as to this, counsel for the State asked to have it clarified whether Olsons' counsel in his questions was talking about the whole unit, that is the 1659 acres, and counsel answered that "we are speaking of the whole place generally." Later owners' counsel stated: "I thought, your Honor, we had shown * * * unity. of use * * * we had demonstrated that as they go in this country, the place was being used as a unit." Court: "The objection is overruled. Proceed." Cf. Bean v. Best, 77 S.D. 433, 445, 93 N.W.2d 403, 410. The jury may have easily understood this as an indication not only that unity of use was shown by the evidence, but that the court had determined that such unity of use existed as a matter of law. Thereafter, when speaking of damages the court permitted the damages to be testified to, based on the whole unit, or rather the two units as his joint or unitary farm or ranching operation. We think the court erred in admitting this evidence. In State Highway Commission v. Bloom, 77 S.D. 452, 93 N.W.2d 572, 77 A.L.R.2d 533, hay was grown on a 240 acre parcel of flood irrigated hay land, cut and hauled by truck to the home ranch two or three miles away. The court held where there is no

dispute in the facts the question of whether physically separated parcels of land constituted one parcel because of common or unitary use is one of law and the described use was not sufficient to allow it to be considered as basis for damages. The situation is much the same here.

■  II.  The State also complains of the giving of Instructions 4 and 13 and the failure to give its requested Instruction 1A. The instructions are to be considered as a whole and, therefore, these and others pertinent are set out:

*"— 4 —*

"The sole issue for your consideration is the amount of defendant's damage.   *   *   *

*"— 6 —*

"Where part of an owner's land is taken for a public improvement and the part taken constitutes an integral and inseparable part of a single unit to which the land taken and other adjoining land is put, the owner is entitled to recover the full damage to his remaining property due to such improvement even though portions of the public improvement are located on land taken from surrounding owners.   *   *   *

*"— 9 —*

"In a condemnation case the question for the jury is the market value of the property to be taken   *   *   *

*"— 10 —*

"In arriving at the value of the **entire tract** prior to the taking, it may be necessary for you to first determine its fair market value prior to such taking. A fair way to arrive at such market value is to determine what a purchaser is able and willing to pay and what a seller, not forced to sell, is willing to sell for. (Emphasis supplied.)   *   *   *

*"— 11 —*

"In arriving at the amount of damages to be awarded to defendants, you shall take into consideration the best

and most profitable use and purpose to which the entire tract is adapted; and, if it is adaptable to a particular purpose which makes it more valuable for that purpose, you shall consider such purpose.

"In other words, compensation to the defendants must be reckoned and awarded from the standpoint of what he, the land owner, loses by the taking of a portion of his **entire unit.** (Emphasis supplied.)

"In arriving at the amount of damages, it is your duty so far as possible to make the defendants whole and to restore them to as good a position as they were in prior to the taking.

"— 12 —

"The State has heretofore acquired a right of way for highway purposes 100 feet in width the damages resulting from which is not to be considered by you in awarding damages.

"— 13 —

"You are instructed you may consider inconvenience in fixing damages in this case."

The State's proposed Instruction 1A, which was refused, read:

"You are further instructed that at the time the Defendant, Olson, purchased the land over which the new highway will extend the State owned, and is now the owner of one hundred feet of the right of way required for such construction, * * * and that in taking the additional lands for highway right of way, as in this action, you can only allow compensation for the additional amount of land taken, and the additional damage that would result to the remainder of the Defendants' land. No compensation can be allowed for the right of way previously purchased for such highway purposes nor for any inconvenience that would result therefrom, but you can allow compensation for the additional taking and additional damage caused by such additional taking."

■ Though the jury was not specifically so instructed, the measure of damages is the difference between the value of the property before the taking and its value after the taking; a fortiori, this includes a proper allowance of severance damages. State Highway Commission v. Fortune, 1958, 77 S.D. 320, 91 N.W.2d 675. There an instruction which permitted an award of damages to the "entire tract" was reversed for including the quoted words.

■■ While the instructions given had the merit of being brief and some of them stated legal principles generally, and the objections to those given and refused were no model of clarity or preciseness, the references to the "entire unit" could have only been understood by the jury to include the 1659 acres farmed by defendants. This, coupled with the whole tenor of defendants' evidence and the court's rulings on it, that the 1659 acres—the 1179 acre home place and the 480 acre tract 15 miles away—was the entire unit or whole unit to be considered in assessing damages was erroneous. If not a direction to the jury to so consider it, the instruction was confusing and misleading; that is a misdirection and available on appeal even assuming no proper objection was made. State etc. v. Fortune, supra.

As indicated in Fortune the court held it error to give a jury instruction which included the correct general formula of difference between the market value before and after taking, but permitted it to be applied to the entire tract, even though the court assumed "the State made no proper objection" thereto, and in Bloom held to the extent the award was based on any severance damage to the separated 240 acre tract from which the crop (hay) was cut and hauled to the ranch, was contrary to law. We must consider the effect of this on the verdict and our disposition of the appeal.

■ While not conceding error in the admission of the evidence (or the concomitant instruction) and "Disregarding the validity of the conclusion of the Trial Court on the question of unity", respondents' brief asserts no prejudice is shown. This for the reason the landowners' expert witnesses valued the west 480 acres the same before and after, and the jury verdict of $4,-

600 was less than their evidence of damages of $5,200 and $6,276. That argument overlooks the fact the trial court properly instructed the jury as to the effect of expert testimony, and this did not apply to the owner Olson's testimony which included the damage claimed to the 480 acre unit. We cannot speculate its effect; defendants believed it had weight as they introduced it. In Bloom the court, after some computation, was able to segregate the amount of the erroneous and excessive damages and concluded upon acceptance of the reduced award by the owner the judgment so reduced would be affirmed, otherwise reversed. We doubt that is possible here.[1] The rulings on evidence and instructions as to the entire unit were prejudicial error requiring the judgment to be reversed.

On a new trial Chicago, M. & St. P. Ry. Co. v. Brink, 16 S.D. 644, 94 N.W. 422 and our later cases, some of which are cited here, indicate the scope of the damages and the evidence to support them.[2]

Reversed.

RENTTO and HANSON, JJ., concur.

ROBERTS, P. J., and HOMEYER, J., dissent.

HOMEYER, Judge (dissenting). I would not reverse. The measure of damages in condemnation cases on a partial taking has been fixed by our decisions. Chicago, M. & St. P. Ry. Co. v. Brink, 16 S.D. 644, 94 N.W. 422; Schuler v. Board of Supervisors, 12 S.D. 460, 81 N.W. 890; State Highway Commission v. Fortune, 77 S.D. 302, 91 N.W.2d 675. It is the difference between the fair market value of the farm or ranch before the taking and its fair

---

1. Deducting the west 480 acre tract on the basis of $5 per acre loss from Olson's testimony would reduce the $4,600 award by $2,400 to $2,200. Allowing 8.86 acres taken at $65 per acre, the value Olson placed on it before taking, results in $575.90 for additional land taken. As State Highway 12 now divides the north 480 acres of the home farm from the south 700 acres, and the owner has had to cross it with livestock and machinery from the north to the south tract, there is no added inconvenience or damage to the 700 acres south of the road. Defendants' witness Lerud so testified—that the whole damage of $5,200 was to the north 480 acres. However, applying defendant Olson's damages of $5 an acre to this 480 acres makes $2,400 severance, which, plus the $575.90, totals $2,975.90. Thus two different amounts are reached.

2. The Brink opinion, so far as our search has found, involves the only similar situation. Cf. 18 Am.Jur., Eminent Domain, § 264; 18 A.L.R. 569 and Martin v. Gravity Drainage District (La.App.1932), 143 So. 93.

market value after the taking. In the application of this rule severance damages, if any, to the remaining property are included in an award without being designated as such. The amount allowed by a jury for the property taken as distinguished from the damage to the remainder is not separated. Severance damage to me does not mean that all parts of the remaining property must have been damaged equally. In fact some parts of an operating unit may not have sustained any damage. In my opinion under our rule it is for the jury to determine the damage to the Olson farm by giving consideration to the many, divergent factors which reflect themselves in a final determination of what is its fair and reasonable market value.

Physical contiguity of tracts in a farm or ranch is not essential to it being considered as one unit. In Fortune we said: "We recognize that separate parcels or tracts of land held in one ownership will be considered as contiguous and may constitute one parcel of land within the meaning of the condemnation statutes if the parts are devoted to a single use." See annotation 6 A.L.R.2d 1197. We also said: "When there is no dispute in the facts, the question whether physically separated parcels of land constitute one parcel because of common use, is a question of law for the Court." My interpretation of the language used is that it is for trial court to determine as a matter of law if sufficient common usage has been shown to qualify noncontiguous tracts as parts of a single unit. If the trial court so concludes, opinion evidence will be received from qualified persons on the before and after value of such unit. If the court does not so conclude, such evidence is not received. The receipt of such evidence does not mean that the trial court has decided as a matter of law that all parts of a farm or ranch have been damaged or that a jury must accept as a fact that each tract included within a farm or ranch has sustained some damage or that each acre has sustained the same dollar damage. A similar situation exists when comparable sales of property are permitted in evidence. In such instances, the trial court determines as a matter of law whether such sales are sufficiently close in time and distance and alike in physical characteristics to serve either as evidence of value, or as the foundation for an opinion on value.

A farmer or rancher seldom sells or buys an operating unit piecemeal. He either buys or sells as a unit and each portion of the unit, be it cultivated land, hay land, pasture, shelter or buildings, are parts of the whole and contribute to the total value in varying amounts. If all parts are contiguous, the total value may be greater and each part may contribute proportionately more. If separated by one mile or fifteen miles, each may contribute proportionately less, or may contribute nothing to enhance the total value. It is a matter ⌐f common knowledge that a landowner's investment in improvements is generally spread over as many acres as he uses within his operating unit, whether or not contiguous, and this has the reciprocal effect of increasing or decreasing the per acre valuation depending on the acreage within the unit. Of course, a unit may be so large as to make unrealistic a determination of damage by a per acre diminution of value resulting in excessive damages. See McGinley v. Platte Valley Public Power & Irrigation Dist., 133 Neb. 420, 275 N.W. 593. However, no such contention has been made in this case and the amount of the award has not been questioned either by motion for new trial or other appropriate procedure.

As I view the evidence, sufficient common usage of the noncontiguous tracts was shown to permit the 1659 acres to be considered as a single operating farm unit. Such determination is primarily for the trial court and I cannot say that it erred in that regard.

There is a second reason why I would not reverse. The valuation witnesses for the defendants consisted of Joe Olson, one of the landowners, and two experts, Oscar Knudson and Craig Lerud. No question is raised as to qualifications of the last two named. A landowner by reason of his ownership is entitled to give an opinion on value. McCaffery v. N. Pac. Ry. Co., 22 N.D. 544, 134 N.W. 749; Orgel on Valuation under Eminent Domain, Second Edition, Volume 1, § 132. However, such testimony has been said to have limited probative value in either sustaining or rejecting jury awards in condemnation cases. See Petroleum Exploration, Inc. v. Hensley, 313 Ky. 98, 230 S.W.2d 464; State v. Burk, 200 Or. 211, 265 P.2d 783; Lyons v. United States, D.C., 99 F.Supp. 429.

The witnesses Knudson and Lerud used the inventory or summation method in arriving at fair market value. This is a recognized method of land appraisal and consists of the witness valuing the component parts of the farm or ranch and arriving at a total before and after value figure. These two witnesses testified in detail how they arrived at the before and after value giving explicit reasons for the diminution of value of the component parts. I summarize these valuations.

## Oscar Knudson

Before taking value:

| | | |
|---|---|---|
| 434.80A | Crop land near home place @ $60 per A. | $26,088 |
| 744.22A | Hay and pasture land @ $32.50 per A. | 24,187 |
| 480.00A | Bullhead land @ $40 per A. | 19,200 |
| | Farm buildings. | 20,000 |

| | | |
|---|---|---|
| 1659.02A | Total before value | $89,475 |

After taking value:

| | | |
|---|---|---|
| 429.80A | Crop land near home place @ $55 per A. | $23,639 |
| 740.36A | Hay and pasture land @ $27.50 per A. | 20,359 |
| 480.00A | Bullhead land @ $40 per A. | 19,200 |
| | Farm buildings. | 20,000 |

| | | |
|---|---|---|
| 1650.16A | Total after value | $83,198 |

| | |
|---|---|
| Total before value (rounded to) | $89,475 |
| Total after value (rounded to) | 83,198 |

| | |
|---|---|
| Damage | $ 6,277 |

## Craig Lerud

Before taking value:

| | | |
|---|---|---:|
| 10.00A | Building site @ $75 per A. | $ 750 |
| 40.00A | Crested wheat grass near bldgs. @ $50 per A. | 2,000 |
| 271.(50)A | Crop land north of hwy. @ $60 per A. | 16,290 |
| 163.30A | Crop land south of hwy. @ $55 per A. | 8,981 |
| 694.22A | Hay and pasture @ $30 per A. | 20,827 |
| 480.00A | Bullhead land @ $40 per A. | 19,200 |
| | Farm buildings | 20,000 |

1659.02A        Total before value     $88,048

After taking value:

| | | |
|---|---|---:|
| 10.00A | Building site @ $75 per A. | $ 750 |
| 40.00A | Crested wheat grass near bldgs. @ $30 per A. | 1,200 |
| 266.50A | Crop land north of hwy. @ $45 per A. | 11,992 |
| 163.30A | Crop land south of hwy. @ $55 per A. | 8,981 |
| 690.36A | Hay and pasture @ $30 per A. | 20,711 |
| 480.00A | Bullhead land @ $40 per A. | 19,200 |
| | Farm buildings. | 20,000 |

1650.16A        Total after value     $82,834

| | |
|---|---:|
| Total before value (rounded to) | $88,000 |
| Total after value (rounded to) | 82,800 |
| Damage | $ 5,200 |

The fulcrum of the majority opinion is that the court erred in permitting the landowner Olson and his witnesses to treat the Bullhead land, a noncontiguous tract located about 15 miles

from the other tracts, as a part of the farm unit. The landowners' witnesses Knudson and Lerud so treated it, but as conclusively appears from the above analysis of their testimony they considered its value the same before and after the taking and thus it sustained no severance damage. In their opinion the damage sustained by the landowners was the same whether the 480 acres was included or omitted from the farm unit.

The landowner Olson testified to a before taking value of his farm of $65 per acre and an after taking value of $60 per acre, a net damage of $5 per acre, or a total damage of about $8,295. I do not conceive that he intended by this testimony to imply to either the court or jury that all parts of the farm were damaged equally. To me he intended to convey that if and when he sold his farm, in the manner in which farms are customarily sold, that is, as an entire operating unit, the fair market value was $65 per acre before the taking. However, after the taking, its fair market value as a unit and without segregating its component parts was $60 per acre. To attach to this testimony under the circumstances the significance to necessitate a reversal as the majority does is unwarranted by this record. Even assuming the trial court should have excluded this 480 acres from consideration as a part of the farm unit and erred in not so doing, I do not see prejudicial error and we have repeatedly said that error without prejudice does not warrant a reversal. Alberts v. Mutual Service Casualty Co., 80 S.D. 303, 123 N.W.2d 96; Dwyer v. Christensen, 77 S.D. 381, 92 N.W.2d 199.

There is a third reason why I would not reverse. Error is assigned on failure to give state's requested Instruction 1 A. This instruction does little except to elaborate on Instruction 12 set forth in the majority opinion. In a few concise words the latter instruction tells the jury that the state had previously acquired a 100 foot right of way for highway purposes "the damages resulting from which is not to be considered by you in awarding damages". There is no error in refusing instructions requested if the matters embodied therein are substantially covered by other instructions.

Another assignment of error relates to giving Instructions 4 and 13 set forth in the majority opinion wherein the court charged the jury that the sole issue was the amount of damages and that the jury could consider inconveniences in fixing damages. In the settlement of the instructions, counsel for the state objected to the court's proposed instructions as misleading and not a correct statement of the law in that they would permit the jury to speculate on damages other than those resulting to the land from the acquisition of the right of way and are also misleading in that the jury may speculate "as whether inconvenience would mean inconveniences during construction."

SDC 1960 Supp. 33.1318 expressly provides that it "shall be insufficient to state generally that an instruction does or does not state the law, but it shall be necessary to specify clearly wherein any instruction, or part thereof objected to, is insufficient or does not state the law." This rule imposes the burden on the objecting party to fairly inform the trial court of the particular ground or grounds upon which he objects to proposed instructions. Lang v. Burns, 77 S.D. 626, 97 N.W.2d 863; Englebert v. Ryder, 77 S.D. 333, 91 N.W.2d 739. These grounds cannot be enlarged on appeal.

The majority opinion states: "While the instructions given had the merit of being brief and some of them stated legal principles generally, **and the objections to those given and refused were no model of clarity or preciseness,** the references to the 'entire unit' could have only been understood by the jury to include the 1659 acres farmed by defendants. This, coupled with the whole tenor of defendants' evidence and the court's rulings on it, that the 1659 acres—the 1179 acre home place and the 480 acre tract 15 miles away—was the entire unit or whole unit to be considered in assessing damages was erroneous. If not a direction to the jury to so consider it, the instruction was confusing and misleading; **that is a misdirection and available on appeal even assuming no proper objection was made."** The majority conclude that misdirection is available on appeal even though no proper objection in the trial court was made. With these conclusions, I do not agree. The verdict of a jury will not ordinarily be set aside for error not brought to the attention of

the trial court. Chambers v. Wilson, 67 S.D. 495, 294 N.W. 180. In exceptional circumstances, especially in criminal cases, this court may perhaps notice errors to which no exception has been taken if the errors are obvious. No such case is presented here.

The Fortune case cited supra and State Highway Commission v. Bloom, 77 S.D. 452, 93 N.W.2d 572, when analyzed do not support the extended application credited by the majority. In Fortune, the State Highway Commission commenced separate condemnation actions against R. A. Fortune and Howard Fortune, on land under separate ownership of each of them. Additionally each had separate leases on government land. The defendants, father and son, held fee title to about 4,200 acres and leased about 8,000 acres. In four sections the highway crossed tracts owned by the defendants which were completely surrounded by leased land. At the trial the cases were consolidated and it was stipulated that the entire acreage constituted a single operating ranch unit and severance damage was to be awarded in one amount on the whole unit "as though the fee ownership of the lands was joint" and the defendants agreed to make "between themselves a division of such total award". This was the stage for this court's ruling of misdirection in the trial court instructions and consequent prejudicial error by referring to the "entire unit" and the "entire tract". This court said: "(T)his principle by which separate parcels of land are deemed contiguous because of a unified or common use is not applicable to lands owned by different parties. Since the measure of damages is the difference between the value of the property before the taking and its value after the taking, which includes a proper allowance for severance, the damages to be awarded the separate owners must be determined separately." Instructions without proper explanation which permitted leased lands to be considered as a part of a unit were held to be erroneous. The foundation for the reversal was the application of an incorrect rule of law on measure of damages premised on a stipulation of counsel.

The Bloom case decided a few months later recognizes the distinction and explicitly calls attention to the fact of single ownership and a delineation of the function and limitation of leased land on value of an operating unit. In Bloom, a single ownership tract of 4,040 acres of land was involved of which 640 acres was noncontiguous. This court affirmed the award except it directed a conditional remittitur of a computed severance allowance on 280 acres. As to this acreage it said: "The defendant failed to establish that the physically separated 240 acre tract was so used with the base ranch as in effect to be considered a part thereof under the principle of unitary use." The opinion does not define when a physically separated tract is or is not a part of an operating unit or what evidence is required to sustain a trial court's decision in that regard. In my opinion in the instant case the evidence is sufficient to support the trial court's conclusion that it was part of the operating unit. Whether the physically separated tract was damaged is another question. This I would leave for jury determination. Cross examination in most instances will reveal that witnesses in determining value, proportion the same on degree of separation, methods of access, nature of use, and the myriad factors which enter into the valuation of property.

The effect of the majority holding it appears to me will be that henceforth in condemnation actions when there is a partial taking and when the landowner has noncontiguous tracts in his operating unit, the trial court must proceed at its peril when it allows testimony of before and after fair market value, if physically separated tracts are included in such valuation. The same uncertainty will be prevalent when the parties and their witnesses prepare for trial.

I am authorized to say that ROBERTS, P. J., concurs in this dissent.