STATE HIGHWAY COMMISSION, Respondent
v. ULLMAN et al., Appellants

(221 N.W.2d 478)

(File No. 11392. Opinion filed September 9, 1974)

------

Alan F. Glover, *Brookings*, for defendants and appellants.

**Carl W. Quist,** Asst. Atty. Gen., **Gary F. Colwill,** Sp. Asst. *Atty. Gen.,* Pierre, for plaintiff and respondent.

WINANS, Justice.

This is an appeal from two condemnation actions initiated by the State of South Dakota pursuant to declarations of taking and petitions for condemnation. The property was acquired for construction of Interstate Highway #29 in Brookings County, South Dakota. The actions were identified on the docket of the Brookings County Clerk of Courts as Civil Action 69-2014 and 69-2015 and were joined together for trial pursuant to stipulation of the parties.

The jury returned a verdict for the defendants of $32,040.00 in case No. 69-0214 and $21,900.00 in case No. 69-2015 or a total verdict of $53,940.00. Separate judgments were entered on the verdicts on February 27, 1973 and filed with the clerk on March 1, 1973. Written notice of entry of judgment was served on March 2, 1973.

Plaintiff, on May 11, 1973, filed with the court its Motion for New Trial or Remittitur. The instrument is dated May 9, 1973, and service by mail was made on defendants' attorney. Briefs were filed with the court, but no hearing was scheduled by the court on said motion, nor was any held.

The trial court made its Memorandum Decision on August 1, 1973, holding that the record disclosed error in the reception of evidence bearing upon gravel deposits as elements of damage. The court held:

"It is clear that the jury was thus permitted to consider a doubling of value loss of land with gravel underlay. The maximum which could have been returned by the jury was $59,350.00, which included a $11,660.00 'mineral value'.

"Thus, if this evidence had been excluded, as it should have been, the maximum which could have been realized under the acceptable proof, would have been (as suggested by Mr. Quist), $47,690.00.

"A remittitur to this amount will be entered upon presentation by the Commission."

The trial court entered its Order for Remittitur September 19, 1973 "reducing the awards in the above actions from $53,940.00 to $47,690.00 on the ground of error in reception of evidence bearing on gravel deposits as elements of damage." An amended judgment was entered accordingly, but the reduced judgment affected the original judgment entered in case No. 69-2015, supra. This was clearly erroneous as will hereinafter appear because there was no gravel deposit recovery in that case. Then two further amended judgments were entered one applying

remittitur of $6,250.00 to the judgment obtained in case No. 69-2014, and the other reinstating the full amount allowed by the jury verdict in case No. 69-2015.

For clarification we note that case No. 69-2014 pertained to about 109 acres of land in Sections 7 and 18, Township 111 North, Range 49 West of the 5th Principal Meridian, and hereinafter referred to as the south farm. The evidence is that the land contained large gravel deposits. Case No. 69-2015 pertained to approximately 59 acres of land in Section 6, in the same township and range, hereinafter referred to as the north farm.

The court in its Order for Remittitur gave defendant no alternative of a new trial.

The assignments of error bring before us two questions.

First, a jurisdictional question concerning the trial court's authority to act upon plaintiff's motion for a New Trial or Remittitur on August 1, 1973, and

Second, whether or not the court erred in reducing the verdict of the jury upon the basis that there was insufficient evidence to support the verdict.

Because we are of the opinion that the court erred in reducing the verdict in this case, we do not need to reach the trial court's jurisdictional question. We have jurisdiction to hear this appeal from the judgment. We are mindful from our reading of the record that the evidence in the case is more than a little difficult to follow. It is plain also that the jury had some difficulty in reaching a verdict. The following is a dialogue between the foreman of the jury and the court in the presence of the attorneys:

"THE FOREMAN:

There were two days of testimony and we were given figures by two appraisers and by three attorneys—

"THE COURT:

Well, you don't have to pay any attention to the attorneys, just the witnesses.

"THE FOREMAN:

And then we were taken from this number to this number and have all of these acreages of this and that which was taken for this and without being able to take notes during all of this time and then to be retired and try to retain or recall everything that we heard and in what areas, we felt this request would help us and could be furnished to us.

"THE COURT:

May I assume that you are asking only for the ultimate figures in each case?

"THE FOREMAN:

Not only for the ultimate figures, we want the figures from the acreages and the amounts of those acreages so that we don't speculate because these maps and exhibits don't show the exact acreages and none of us or not all of us certainly retained every detail and every figure that was presented over the two day trial.

"THE COURT:

Well, I am not going to do that—well, I will have in mind then your request. You may retire again and I will consider what may be done."

The jury retired and a few minutes later was called back, and the following occurred:

"THE COURT:

* * * Members of the jury I have given consideration to the request made by your Foreman and I have concluded that a page of statistics based upon the evidence in this case labeled Court Exhibit which relates to the number of acres condemned and the valuation testimony of all of the witnesses, both before and after the taking and indicating the differences and I am afraid that this must be the extent of the compliance with the

request which is practically impossible short of re-trying the case or sitting here and listen to the Court Reporter for the next day and a half. That being the case is there any objection on the part of the plaintiff?

"MR. QUIST: (plaintiff's attorney)

No, your honor.

"THE COURT:

The defendant?

"MR. GLOVER: (defendants' attorney)

No, your honor."

The court's exhibit "A" referred to above and approved by the attorneys for use by the jury is in words and figures as follows:

"Valuation Testimony Of The Following Witnesses:

| | Before | After | Difference |
|---|---|---|---|
| **Ullman** | | | |
| (north) | $64,230 | $40,580 | $23,650 |
| (south) | $94,500 | $58,800 | $35,700 |
| **Wilkins** | | | |
| (north) | $46,250 | $27,600 | $18,650 |
| (south) | $81,750 | $45,310 | $36,440 |
| **Felker** | | | |
| (north) | $56,400 | $40,600 | $15,800 |
| (south) | $56,800 | $36,200 | $20,600" |

Mr. Ullman is the owner of the property and a defendant and appellant herein.

Mr. Wilkins was a valuation witness for defendant.

Mr. Felker was a valuation witness for plaintiff.

The jury verdict is lower than those given on behalf of defendant owners, and considerably higher than those given by plaintiff's witness.

The evidence as to value was conflicting. This court in the case of State Highway Commission v. Madsen, 1963, 80 S.D. 120, 119 N.W.2d 924, which was an appeal on the inadequacy of the award, stated the rule of law as follows:

"When the evidence is conflicting the verdict of the jury will not be set aside, unless it is shown to be clearly wrong."

State Highway Commission v. Miller, 1968, 83 S.D. 124, 155 N.W.2d 780, which brought up the question of excessive damages by a jury of "local people" states the rule:

"Neither that situation (local jury) nor the fact the verdict may seem generous permits a reviewing court to interfere with the jury's verdict."

It appears from the Memorandum Decision by the court, supra, that the trial court first determined that it erred in receiving evidence bearing on gravel deposits as an element of value in determining market value. We have heretofore in this opinion indicated that the evidence was confusing in this respect, but exhibit "A" by the court, agreed to by the attorneys, is not confusing. It expresses a correct standard for valuation purposes in an unliquidated damage condemnation action.

The plaintiff contends that valuing gravel deposits is improper since "it permitted double valuation of the land in question. By deducing the value of the land from the market and then adding value due to gravel income, double valuation is permitted. This is so because income from gravel is already considered along with all sources of income producible from the land and is reflected in what land sells for in the market."

[1] We would agree that double valuation should not be permitted, but we also believe that if land has valuable deposits of oil, coal, gold, silver, gravel, sand, etc., whatever has a value in the market is properly allowable as evidence of market value in the computation of the before and after value.

In Chicago, M. & St. P. R. Co. v. Mason, 1909, 23 S.D. 564, 122 N.W. 601, this Court stated the rule of law as follows:

"On the trial the appellant offered to prove the value per yard of gravel and sand as a method of arriving at the value of the land, taken in connection with an estimate of the number of cubic yards of gravel and sand on the 34.8 acres of land in question. The offer was objected to as immaterial, and not a proper measure of damage, and to the ruling of the court sustaining the objection the appellant excepted, and now urges that such ruling was error. But we are of the opinion that the objection was properly sustained. The estimate as to the number of cubic yards of sand and gravel is speculation only, and would afford no true or reasonable rule as to the value of the land. The jury were instructed that they should allow the appellant the full market value of the 34.8 acres of land taken for any and all uses to which said land might be put in view and in the light of present business conditions, and those that might be reasonably expected in the immediate future, together with such damages as appellant might suffer to the remaining portion of his farm by reason of having the 34.8 acres taken therefrom, and it occurs to us that the learned trial court properly submitted the question of damage to the jury."

In State Highway Commission v. American Memorial Parks, 82 S.D. 231, 144 N.W.2d 25, this court said of Mason that it "held an estimate of number of cubic yards of sand then on the land to be speculation only and no true rule as to the value." Mason does not hold that minerals may not be considered by the jury.

This is made even clearer by a later South Dakota case, Belle Fourche Valley Ry. v. Belle Fourche Land & Cattle Co., 1911, 28 S.D. 289, 133 N.W. 261, where the question was whether the owner of the condemned property was entitled to show "as touching the value of its land taken and injured, that the land had a speculative value owing to its proximity to a growing town, and also to show that said lands were suitable for use as apple orchards?" The court answered the question by a quote from Lewis on Eminent Domain, Vol. 2 (3rd Ed.) p. 1238: " 'The condition of the property and all its surroundings may be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it.' "

In Medelman v. Stanton-Pilger Drainage Dist., 1952, 155 Neb. 518, 52 N.W.2d 328, the Nebraska Supreme Court stated its rule:

> "Appellants introduced evidence to the effect that the lands taken contained a gravel bed adaptable to being developed for the profitable production of commercial gravel and the witness considered that fact in placing his value thereon. On the other hand appellee introduced evidence as to the value of the lands based on its use for pasture and agricultural purposes only. It is not necessary that a witness, testifying as to the fair market value of lands, be familiar with, have knowledge of, and take into consideration every possible use to which the owner of the lands being taken may think they are adaptable. What a witness considers in coming to his conclusion as to the value thereof can be brought out in cross-examination. However, the owner may show all of the reasonable uses to which he thinks the lands are adaptable and what the lands are worth in view thereof. If, as a result thereof, there is conflict in whether the lands are adaptable for a certain use it is then up to the jury to determine which of the two views they believe."

Iowa states the rule as follows:

> " ' "With remarkable unanimity the courts hold that in determining the compensation in eminent domain proceedings for the land to be condemned, the existence of valuable mineral deposits in the land taken constitutes an element which may be taken into consideration if and in so far as it influences the market [or actual] value of the land. * * *" ' " Townsend v. Mid-America Pipeline Company, 1969, Iowa, 168 N.W.2d 30.

27 Am.Jur.2d, Eminent Domain, § 290 states:

> "The rule ordinarily applicable, although there are certain circumstances in which it may not be applied, is

that in determining the compensation in eminent domain proceedings the existence of valuable mineral deposits in the land taken constitutes an element which may be considered insofar as it influences the market value of the land. The general rule has been applied indiscriminately to all forms of mineral deposits, such as coal, ore, gold, fire clay, sand and gravel, and stone or limestone. The rule has frequently been expressed, however, by the negative statement that the award may not be reached by separately evaluating the land and the deposits, since the latter, being only one element among many in determining the market value of the land, cannot be considered as an independent factor the value of which is to be added to the value of the land.

"With regard to the question as to how far the factor that the land taken contains valuable mineral deposits will influence the amount of the award for the taking, it seems to be well settled that the market value of the land containing mineral deposits is not to be estimated upon the basis of the present use of the land only, but that the value of the property for any purpose for which it is available may be considered."

Further, the trial court properly and fully instructed on this matter so as to avoid any possibility of double valuation. In Instruction No. 5, the court stated:

"* * * just compensation due the landowner is that amount which is equal to the difference between the fair market value of the entire property immediately before the taking, and the fair market value of that part remaining immediately after the taking."

In Instruction No. 6, the court stated:

"In determining the fair market value of the entire tract, you may take into consideration its location, the highest and best uses and purposes for which it is suitable or adaptable, considering such location, and having regard not only to the existing business wants of the

community in which it is located, but also to such uses as may be reasonably expected in the near future, together with all the surroundings and conditions as shown in the evidence in this case, * * *."

The court further instructed in Instruction No. 8:

> "You are instructed that if the property taken contains gravel deposits, you may take this into consideration in determining the compensation to which the landowner is entitled, but only insofar as the gravel affects the market value of the land. In other words, the land taken must be valued as land with the factor of gravel deposits given consideration only if the gravel affects the market value of the land.

> "The landowner is not entitled to recover for gravel valued separately as a saleable item in addition to the land taken."

These instructions were not excepted to by either of the parties.

■ Thus, even though the present highest and best use of this land was agriculture, the jury had a right to consider the value of the gravel under the land as a use that might be reasonably expected in the near future, in determining the present full and fair market value of the land.

■ It is our opinion based on all of the testimony, that it is clearly established there was a great quantity of good quality gravel located on the south farm. In addition, there was a market available for such gravel, thus affecting the market valuation of real estate containing good gravel deposits. Both Mr. Ullman and his valuation witness testified that they took this into consideration as a part of their before and after value placed on the south farm.

We therefore hold that the court abused its discretion in allowing remittitur, and we direct that the jury verdict be reinstated.

Reversed.

WOLLMAN, DOYLE and DUNN, JJ., concur.

COLER, J., not being a member of this Court when this case was argued, takes no part in the decision.